## Felix Powell v. The State.

### No. 3870.   Decided January 30, 1907.

**1.—Murder in the First Degree—Handcuffs—Practice in District Court.**

Upon a trial for murder defendant was first brought into the court room handcuffed; when the court's attention was called to this matter he required that the handcuffs be taken off of defendant during the trial, but instructed the officer that he might replace the handcuffs out of the presence of the jury, in taking him to and from the jail. While this practice might · have been avoided, still it was a matter within the sound discretion of the trial judge, and there being no abuse of power, there was no error.

**2.—Same—Enforcing Rule—Witnesses—Bill of Exceptions.**

Upon trial for murder, where on appeal the bill of exceptions did not show that an exception was taken to the introduction of witnesses, because they had not been placed under the rule, when they came to testify, that they testified to material matter or that the witnesses were introduced at all, the matter could not be considered on appeal; besides no abuse of the court's discretion was shown in not placing the witnesses under the rule.

**3.—Same—Evidence—Withdrawal of Testimony—Irrelevant Matter.**

Where upon trial for murder the State's witness was permitted to testify to a conversation she had with the mother of the defendant with regard to a certain piece of sack or towel, which testimony as soon as objected to was excluded from ·the jury by proper instruction, there was no error; besides the bill of exceptions was defective in not showing the absence of the defendant during said conversation.

**4.—Same—Accomplice—Charge of Court.**

It is not an objection that an accomplice is used as a witness, this merely goes to the weight of his testimony, and where this testimony is sufficiently safeguarded by the court's charge, there was no error.

**5.—Same—Photographs—Evidence—Print of Hand.**

Where upon trial for murder the evidence showed the impressions of a bloody hand on different places about the house where the homicide was committed and which showed a peculiarity as to the little finger of the right hand, there was no error in permitting the introduction of impressions and photographs of defendant's right hand, which had been taken with his consent, in order to show the similarity between such impressions and defendant's hand.

**6.—Same—Withdrawal of Testimony—Hearsay.**

Upon trial for murder, testimony was admitted without objection of defendant as to declarations between third parties in the absence of defendant, which testimony was subsequently, on objection of defendant, excluded from the jury, said testimony relating to what the deceased had said about the defendant, there was no error.

**7.—Same—Case Stated—Death Penalty.**

Where upon trial for murder, the evidence consisting of circumstances outside of defendant's confession was amply sufficient to sustain a verdict of conviction, and with this confession pointed unerringly to the guilt of the defendant, the verdict assessing the death penalty will not be disturbed.

Appeal from the District Court of Victoria.   Tried below before the Hon. James C. Wilson.

Appeal from a conviction of murder in the first degree; penalty, death.

*A. B. Petticolas* and *Ben W. Fly,* under appointment of the court, for appellant.

*J. E. Yantis,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was charged by indictment, which jointly charged him and Monk Gibson with the murder of Mildred Lee Conditt. The first count in the indictment charged that said parties killed Mildred Lee Conditt by cutting her with a knife, and the second count charged that they killed her by cutting her with some sharp instrument, the description of which was unknown to the grand jury. There are a number of other counts in the indictment, some charging killing by Powell and that Monk Gibson aided and abetted him, and some charging killing by Monk Gibson and that appellant aided and abetted him. On the trial there was a severance, and appellant was placed on trial, and as a result thereof he was found guilty of murder in the first degree, and his punishment fixed at death; hence this appeal.

Aside from some confessions of appellant tending to show that he killed deceased, the case is one of circumstantial evidence. These circumstances succinctly stated show that on the 28th of September, 1905, Conditt, with his wife and five children, lived in Jackson County about two miles from Edna, the county seat, having resided there at the time of the homicide about two weeks. There lived in the same vicinity a number of negroes. John Diggs and Augusta Diggs, and Flossie, a young girl, the daughter of the latter, resided at the Diggs' place which was situated opposite the Conditt house on the Edna road about two hundred yards from Conditt's. On the same side of the road about one hundred and fifty to two hundred yards from the Diggs' house, Warren Powell and his wife Irene Powell lived with their family of several children. With them at the time lived appellant and his mother Lizzie Powell. This place was about four or five hundred yards from the Conditt house. Some three or four hundred yards farther back, Henry Howard, another negro, and his family lived. Some mile from the Conditt house, John Gibson the nearest white neighbor and his family lived. That vicinity was level prairie and was used for farming. The view between the Diggs' place and the Conditt place was unobstructed except for some weeds, but these were not tall, and persons could easily be seen from one place to the other. The view was not so plain from the Powell house to the Conditt house, it being farther. On the day of the homicide, which was the 28th of September, 1905, Conditt was engaged in working at a rice farm some four or five miles distant from his house. He left home in the morning about 4 or 5 o'clock, leaving his family, also one Monk Gibson, appellant's codefendant, who was engaged by Conditt to break some land, near his house. This negro boy, that morning, was plowing in the field from one to two hundred yards distant from the Conditt house.

Appellant was seen with him walking up and down as Monk Gibson was plowing with the oxen seemingly in conversation with him somewhere between 8 and 10 o'clock. After this appellant was seen with three little children, that belonged on his brother Warren Powell's place, at the Diggs' place, with a different suit on than that which the witness describes he had on when he was walking in the field with Monk Gibson. After passing where John Diggs was raking sorghum, where he tarried and talked some fifteen or twenty minutes, he came on to the Diggs' place, and there, according to the testimony of Augusta Diggs, engaged in a conversation with her from one to two hours, and she states that during the conversation he told her that he had got, up at the Conditt house, what he wanted a long time, and that he and Monk Gibson and Henry Howard had killed out the Conditt family. She evidently did not credit this, and told him to go along or hush up, or something to that effect. Subsequent to this appellant returned with the children that accompanied him to his brother's house, and somewhere about 11 o'clock came out the lane to the Edna road, after which he proceeded in the direction of Edna two miles distant. Henry Howard soon afterwards came out of the lane on horse-back, and after he passed into the Edna road he overtook appellant, who gave him a quilt, that was shown to have had something in it and tied at each end, to hold while he got up behind him. Appellant then took his quilt bundle and proceeded with Henry Howard to Edna. Both, it seems, were going to work that evening at one Young's, gathering sorghum. When they had gotten to the suburbs appellant got off the horse and went one way and Henry Howard proceeded on his horse another way. In the meantime no one had discovered the murder of the Conditt family which, as we gather from the record, must have occured somewhere between 8 and 10 o'clock. The first information derived as to what occurred there came from Monk Gibson who, shortly after appellant and Howard had left that vicinity, came to the Diggs' place and informed them that something had happened or that there was a fuss at the Conditt place. He was then on his way to inform John Gibson about it. The witness Augusta Diggs stated she kept looking over toward the Conditt place and she saw a white man after a while ride up in front of the gate and he suddenly disappeared and she did not know which way he went. This must have been John Gibson who, in the meantime, had been informed that something had happened at the Conditt house by Monk Gibson, as he testifies that he rode up to the place after receiving the information from Monk Gibson and saw Mrs. Conditt lying in the front door evidently dead; that he immediately turned and rode off to arouse the neighborhood, not getting down. The witness, Augusta Diggs, further states that she started over to the Conditt place and got part of the way, and got frightened and went back, and that her father, John Diggs, climbed up on the crib and looked over there. In a short time the whole neighborhood was aroused and the officers came on the ground, and

the bodies of Mrs. Conditt, her daughter, Mildred Lee Conditt, who was 12 years of age, and a little son 3 years old, were found to have been murdered at the house, the body of Mrs. Conditt, showing that she had been both stabbed and knocked in the head with some blunt instrument, was lying near the front door. Mildred's body was found in one of the bed rooms, her throat was cut and she was terribly mangled, her clothes were up around her waist, her parts showed that she had been ravished and were bloody and swollen. On the ground back of the house was the body of the little 3-year-old boy, whose head was nearly severed from his body. The only living person to be seen was the babe, a little boy about 10 months old, who was crawling about on the floor. Shortly after the crowd began to arrive search was made out along a string of fence that the two boys were fixing that morning some one hundred and fifty yards from the residence. The oldest boy was 10 and the other 6 years old. These two boys were found with their heads terribly mangled and crushed. The oldest, who was on the side of the fence next to the house, from appearances, must evidently have started toward the house, the murderers observing him, pursued and struck him down. The smaller boy was found on the other side of the fence some seventy-five or one hundred yards from his older brother with his head crushed.

Evidently the motive for this horrible crime was rape. The young girl was unquestionably ravished, and the circumstances suggest that this must have been the fate of Mrs. Conditt. The others were murdered by the perpetrators of the rape in order to escape detection. Monk Gibson was arrested in a short time, but this appellant was not arrested for a week or ten days after the occurrence. After being detained in jail for a short while he was released, the evidence against him not being considered satisfactory, and he was not arrested again until some time in the summer of 1906, when he was taken into custody and indictment preferred against him. It is not necessary here to recount the various facts which were proven against him tending to show circumstantially his guilt. These, it occurs to us, even aside from the confessions made by appellant to Augusta Diggs and the officers, are sufficient to establish the guilt of appellant beyond any reasonable doubt as one of the perpetrators of this horrible crime. This is a sufficient statement of the case in order to discuss appellant's assignments of error.

It appears by bill of exceptions reserved by appellant, that when the trial began appellant was first brought into the court room handcuffed. The court's attention was called to this matter and he required that the handcuffs be taken off of appellant during his trial, and as explained by the court, he further says that it being reported to him that appellant was dangerous and might attempt to escape or injure the officers, that he required, in taking him to and from the jail to the courthouse, they should take the manacles off of him and replace same out of the presence of the jury, which the court cer-

tifies was done after the first occurence, and as soon as his attention was called thereto. A question somewhat analogous, was before this court in Rainey v. State, 20 Texas Crim. App., 455. In that case what Mr. Bishop said on the subject was referred to with approval, see vol. 1, Bishop's Crim. Proc., sec. 955, and also State v. Kring, 64 Mo., 591. The rule as deduced from these and other authorities, seems to be, that it is not permissible except in extreme cases for good reason to bring a prisoner into court who is being tried, manacled. But if the prisoner is dangerous to his keepers, or is liable to escape, and it is necessary to bring him into court with handcuffs on, this seems to be allowable. Here it appears as soon as the court's attention was called to this matter he required the officers to remove the handcuffs from the prisoner while he was being tried before the jury, but the officers were allowed to replace the handcuffs on him before taking him from the court room, but this the court certifies was out of the presence of the jury, and the court also certifies this was for the cause as stated above. While this conduct of the officers appears to have been approved by the court, for the reasons as stated, it semes to us that even this could have been avoided. A number of officers were present and for aught that appears the safety of the prisoner could have been assured without resorting to this course; however, this is a matter within the sound discretion of the trial judge, and unless there appears an abuse of this discretion to the injury of the prisoner, a case should not be reversed on this ground. No such injury here appears.

Appellant assigns as error the action of the court in refusing to place the witnesses McCrory and McDonald under the rule, that is, in permitting them to remain in the court room while the other witnesses were testifying. There is evidently an attempt to reserve a bill of exceptions to the action of the court on this subject; attached to the transcript of the evidence is a leaf pasted on the front page thereof which is as follows: "Be it remembered that upon the trial of this cause, after the witnesses had been sworn and placed under the rule, counsel for defendant objected to the witnesses McCrory and McDonald remaining in the court room for the reason that Capt. McDonald had acted as a special detective in this case and was one of the principal witnesses for the State, and was not an officer of this court, which objection was by the court overruled upon the ground that McCrory was an officer of the court and was assisting in the prosecution of this case, and that in the judgment of the court it was necessary to retain Capt. McDonald in the court room for the purpose of guarding the prisoner." To which ruling of the court defendant then and there, in open court, excepted. Defendant further excepted to the ruling of the court as to the necessity for retaining the presence of Capt. McDonald in the court room for the purpose of guarding the prisoner." We cannot, under the rules, regard this as a bill of exceptions; however, if it could be so considered, it

does not appear that the court abused its discretion in not subjecting these witnesses to the rule. Indeed, a bill of exceptions to have reached a question of any materiality as to this matter should have shown that an exception was taken to the introduction of these witnesses when they came to testify, and it should have been shown in that connection that they testified on material matters, and that as to such matters, other witnesses testified in such measure and as to some questions which might have influenced the testimony of said witness, but there is no bill, and no showing that said parties were ever introduced as witnesses, or ever gave testimony in the case. As presented we do not think, in the first place, it shows an abuse of the court's discretion in not placing the witnesses under the rule, and certainly the failure of appellant to take a bill of exceptions to the introduction of said persons as witnesses and to their testimony does not put the matter in such shape as can be reviewed.

It appears that during the progress of the trial, while the State's witness Irene Powell was on the stand, she was permitted to testify to a conversation she had with the mother of defendant, Lizzie Powell, in regard to a certain piece of sack used as a towel. This witness testified that Felix Powell was there and that during the course of the conversation, after the sheriff had left, Lizzie Powell, said that it was a good thing that she had washed that towel that she had given Felix to take to town that day to wipe his face and hands on. She said if she had not washed it her poor child would have been put in jail; the witness asked her what was on it, and she said it was paint. There is a page or two covering this matter, but it is exceedingly difficult to determine the character of the bill of exceptions, or to determine whether or not appellant was present at the time and heard the conversation, but as soon as the matter was objected to, it appears that it was excluded by the court and the jury instructed not to consider it. This it appears cured any possible error that could be complained of.

Appellant also objected to certain witnesses testifying on the ground that they were accomplices. It is not an objection to a witness testifying in a case where such witness is an accomplice. This, under the statute, goes merely to the weight of the testimony. The testimony of these accomplices was sufficiently safeguarded by instructions of the court which is not excepted to.

There was an objection to the witness McDonald testifying as to photographs taken of the appellant's right hand. It appears that appellant's little finger on his right hand was abnormal, was shorter than ordinary, and was stiff and in doubling and in grasping an object the little finger made a peculiar mark, different from an ordinary hand, or in clinching the fist, the knuckles made an impression on an object, different from an ordinary hand. In this connection it may be observed that there was discovered at the house the impression of a bloody hand on the door facing about two feet from the floor,

where a bloody hand had grasped the door facing and left a peculiar mark discernible as to the little finger of the right hand; also on the outside of the house near where the body of the little 3-year-old boy was discovered, there was found on a plank an impression of the bloody fist of some person, which appeared to be grasping some object assumed to be a knife: This impression showed a peculiarity as to the little finger of the right hand. It seems that Capt. McDonald took impressions and photographs of appellant's right hand, but did so with his consent, and after he had duly warned appellant. There was unquestionably no objection that could be considered tenable as to this course of conduct.

Appellant further objected to the action of the court with reference to the testimony of Mrs. Archie McDowell. It appears that a few days before the homicide, the little girl Mildred Lee Conditt went with a smaller brother to the rice farm, where her father was working, in order to bring him home in the buggy that she drove. While there she had a conversation with Mrs. McDowell, which she testified to without objection, to wit: that she asked the little girl if she was afraid to stay out there at the Conditt's home by themselves when their father was gone, and to which she replied that she was not afraid, but she was only afraid of the defendant who had talked bad to her a few days before. When this testimony was admitted there was no objection. Subsequently, on objection the court excluded it from the jury and told them not to regard it: there was no error as to this matter. Whatever ill effect may have occurred from this testimony occurred on account of the failure of appellant's counsel to object in time. As soon as they asked its exclusion, this was promptly done. We have examined this record carefully, and in our opinion it contains no reversible errors. As stated before, the evidence consisting of circumstances outside of the confessions of appellant, is ample to sustain this conviction, but when super-added to these circumstances is the confession made by appellant to Augusta Diggs, on the very day of the homicide, that he had been to the Conditt place and had got what he had wanted, and further that he and Gibson and Howard had killed out the whole Conditt family, which (though this witness at the time did not credit, subsequently turned out to be but too true), is certainly a very cogent piece of testimony against appellant; and, moreover, after he was put in jail, the testimony shows that he repeatedly sent for Capt. McDonald, for the purpose of making a full disclosure to him as to the charge against him; and according to his evidence, as also that of Mr. Egg and others, on more than one occasion, appellant appeared to go right up to a confession, when he would break off and say "it is too horrid, it is too awful, I can't tell it." This, while not in itself a confession of the crime, is deeply inculpatory. Aside from this, we have appellant's false accounts as to where he was during that day, his self-denials, and his clash with almost every witness upon essential features of the case; also the bloody

hand prints corresponding to appellant's found on the premises, together with his opportunity to commit the offense; all these circumstances authorize us in saying, that of all persons in the world, appellant and one other person had the opportunity to commit this diabolical murder. The circumstances are of such a cogent character as to exclude every other reasonable hypothesis save that of his guilt,—and all this was done in order to accomplish his beastly lust. The victims of his fiendish passion were not only killed in order to destroy the evidence against him, but in order to secure his safety against detection, he slew the young and helpless. The tiger or the hyena, in order to quench his thirst for blood, could do no more than was done here in the shape of brutality, but the motive of the wild beast to allay his appetite and hunger for blood would be upon a higher plane, than actuated this brute in human form, whose only incentive was lust. If in all the annals of crime there is a case that justly demands the supreme penalty of the law, it is furnished by this record, which points to the guilt of this defendant with the unerring finger of fate. The judgment is accordingly affirmed.

*Affirmed.*