PEOPLE v. LES.

1. CRIMINAL LAW—PALM PRINTS.
   Evidence of experts as to identity of latent and actual palm prints is a proper subject for consideration of a jury which will determine weight to be given such testimony.

2. SAME—FINGERPRINTS—STATUTES.
   Act No. 197, Pub. Acts 1931, amending 1 Comp. Laws 1929, §§ 567–573, imposing upon police officers the duty of taking fingerprints of persons arrested for felony is not a limitation upon their lawful actions in the detection and apprehension of criminals.

3. SAME—VOLUNTARY SUBMISSION TO PALM PRINTING—QUESTION FOR JURY.
   Question of whether or not the taking of a palm print was voluntary is for jury (Const. art. 2, § 16).

4. SAME—EVIDENCE—BURGLARY CHARGE—PROBABLE CAUSE.
   Proof that crime charged in .the information was committed and evidence of experts as to identity of latent and actual palm prints held, sufficient showing of probable cause for holding defendant for trial on burglary charge (Act No. 328, Pub. Acts 1931, §§ 110, 360).

Appeal from Recorder's Court of Detroit; Jeffries (Edward J.), J. Submitted May 8, 1934. (Calendar No. 37,606.) Decided June 4, 1934.

Eugene Les was arraigned on an information charging him with breaking and entering a dwelling house in the nighttime with intent to commit a larceny. Order quashing information is reviewed by the people on appeal in the nature of mandamus. Writ granted.

*Patrick H. O'Brien,* Attorney General, *Harry S. Toy,* Prosecuting Attorney, and *Howard Bowman* and *Edmund E. Shepherd,* Assistants Prosecuting Attorney, for the people.

*George C. Parzen (Harry S. Bennett,* of counsel), for defendant.

BUSHNELL, J. The precise question presented by this appeal is one of first impression in this State.

The defendant, after examination in the recorder's court of the city of Detroit, was arraigned on an information charging him with breaking and entering a dwelling house in the nighttime, with intent to commit a larceny therein. The information is laid under the Michigan penal code (Act No. 328, Pub. Acts 1931, §§ 110, 360), and contains a larceny count. Subsequently, a motion to quash the information was heard. Counsel for the State admitted that, to establish probable cause, they relied solely upon (1) proof that the crime charged in the information was committed (the *corpus delicti*), and (2) proof that a palm print of defendant's right hand was found on the sill of the rear bedroom window through which the offender effected an entrance, such discovery having been made by a police officer and fingerprint expert within 12 hours of the commission of the offense. The premises had been isolated during the interim.

The defendant contended that (1) such proofs were insufficient to make such a showing of probable cause as would justify binding defendant over for trial; (2) that Act No. 197, Pub. Acts 1931, amending 1 Comp. Laws 1929, §§ 567–573, providing for the taking of fingerprints in case of arrest for felony, did not justify the officers in taking defendant's palm prints after his arrest on general

suspicion; and (3) that in so doing the officers violated defendant's rights and compelled him to incriminate himself against his will in violation of article 2, § 16, of the Constitution of this State. The court ruled that the evidence was insufficient to hold the defendant for trial, quashed the information and ordered the discharge of the defendant. We granted leave to appeal from the order and directed that the cause be heard as a motion.

The exhibits attached to the record include a photograph of a portion of a human palm print, found on the window sill of the premises in question, marked exhibit 1 and hereafter referred to as the "latent print," and a photograph of a print of the right palm of the defendant, marked exhibit 2 and hereafter referred to as the "actual print." These prints are both marked in 15 different places, each of which is claimed to reveal an identical characteristic.

The prints are read in this manner: An identical characteristic is located on both prints, and marked number 1, it being in this case a dot. Number 2 identical characteristic is a point at the end of a line, separated on both prints from number 1 by one intervening line. Number 3 is the end of a line separated from 2 on both prints by two lines. Number 4 is another end of a line separated from 2 on both prints by two lines. Number 4 is another end of a line separated from 3 by three lines on both prints, while numbers 5 and 6 are two dots found on both prints between 4 and the next line. Number 7 is the end of a line separated from 6 by six unbroken lines, and so on clockwise around both prints until 15 identical characteristics have been read, located in the same position on each. The general similarity of

the latent and actual prints is obvious to one who has never before read a print.

There seems to be little or no difference between the methods employed in the reading of palm prints and fingerprints. It is true that palm prints are not used as extensively as fingerprints and are not generally tabulated. The authorities on the subject are agreed, however, that the same types of peculiarities exist in the palms and feet as in the fingers. The permanent nature and individuality of the fingerprint was first put forward in a scientific manner by J. E. Purkinje, an eminent professor of physiology, in a paper read before the University of Breslau in 1823. He adduced nine standard types of impressions and advocated a system of classification which attracted no great attention. Sir Francis Galton later did much to advance the use of the science, and today it is an accepted and well-recognized aid not only in the identification of criminals, but for many other purposes. Sound authority declares that fingerprints are reliable as a means of identification. See, 9 Encyclopedia Britannica (14th Ed.), p. 249. The fingerprints of millions of men in the service during the late war were taken and proved invaluable in many instances. In India, fingerprints have long been used to prevent false impersonation and to fix the identity of those who execute documents. C. Ainsworth Mitchell in "Science and the Criminal," p. 51 (1911). Their use is well known in connection with the postal savings system, and foot prints have become an accepted means of identifying new-born babies in the obstetrical wards of hospitals.

We have passed upon the propriety of permitting an experiment in fingerprinting before a jury, in *People* v. *Chimovitz*, 237 Mich. 247, holding it to be

within the sound discretion of the court. The experiment was designed to indicate to the jury the accuracy of such evidence, the admissibility of which does not seem to have been questioned. Practically all the decisions in which the question has been considered have held that evidence as to the correspondence of fingerprints is admissible to prove identity. See *Powell v. State,* 50 Tex. Cr. R. 592 (99 S. W. 1005); *Brown v. State,* 76 Tex. Cr. R. 316 (174 S. W. 360); and *State v. Miller,* 71 N. J. Law, 527 (60 Atl. 202).

See, also, cases collected in 3 A. L. R. 1706, 16 A. L. R. 370, and 63 A. L. R. 1324.

The case of first impression upon the question whether evidence as to the identity of palm print impressions is admissible, as tending to connect the accused with the commission of the crime, is *State v. Kuhl,* 42 Nev. 185 (175 Pac. 190, 3 A. L. R. 1694). There Chief Justice McCarran traced the history of the science and quoted liberally from the authorities, referring to the leading fingerprint cases in this country. *People v. Jennings,* 252 Ill. 534 (96 N. E. 1077, 43 L. R. A. [N. S.] 1206); *People v. Roach,* 215 N. Y. 592 (109 N. E. 618, Ann. Cas. 1917 A, 410); *Young v. State,* 68 Ala. 569; and *People v. Storrs,* 207 N. Y. 147 (100 N. E. 730, 45 L. R. A. [N. S.] 860). The learned discussion in the *Kuhl Case* is ample authority for a holding that palm prints are just as valuable and accurate as fingerprints. The evidence of experts as to the identity of latent and actual palm prints is a proper subject for the consideration of a jury, and the weight to be given such testimony is for the jury to determine. Further, such evidence may be a sufficient showing of probable cause.

Does Act No. 197, Pub. Acts 1931, amending 1 Comp. Laws 1929, §§ 567–573, justify police officers in taking the palm prints of one arrested on suspicion? This act imposes upon police officers the

duty to take fingerprints upon an arrest for a felony, and is not a limitation upon their lawful actions in the detection and apprehension of criminals. We do not understand that it is claimed that the defendant's palm prints were taken under the authority of this act.

Was the taking of defendant's palm print a violation of his constitutional rights? In *Moon* v. *State,* 22 Ariz. 418 (198 Pac. 288, 16 A. L. R. 362), it was held that a constitutional prohibition against self-incrimination was not violated by the introduction in evidence of photographs of fingerprint impressions which defendant voluntarily suffered to be taken.

"The prohibition of compelling a man in a criminal case to be a witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof." *Holt* v. *United States,* 218 U. S. 245, 252 (31 Sup. Ct. 2, 20 Ann. Cas. 1138).

In *People* v. *Sallow,* 100 Misc. Rep. 447 (165 N. Y. Supp. 915), the court, in concluding an extensive discussion of the authorities bearing upon the construction of the constitutional provision, said:

"It has always, at common law and in the practice prevailing under the Constitution and laws of our State, been permissible to put in evidence, for the purpose of identification of the defendant, testimony as to his personal appearance, his hair, his eyes, his complexion, marks, scars, teeth, his hands, and the like. Fingerprints are but the tracings of physical characteristics or the lines upon the fingers. Nothing further is required in fingerprinting than has been sustained heretofore by the courts in mak-

ing proof of identification. The steps are to exhibit the fingers of the hands and to permit a record of their impressions to be taken. The requirements that the defendant's fingerprints be taken for the purpose of establishing identity is not objectionable in principle. There is neither torture, nor volition, nor chance of error. The defendant is required to allow another to make observation and record. Torture is defined as 'the act of inflicting severe pain as a means of persuasion.' Century Dictionary. Fingerprinting is entirely harmless, and it is not done as a means of persuasion.      *      *      *

"No volition—that is, no act of willing—on the part of the mind of the defendant is required. Fingerprints of an unconscious person, or even of a dead person, are as accurate as those of the living. * * * By the requirement that the defendant's fingerprints be taken there is no danger that the defendant will be required to give false testimony. The witness does not testify. The physical facts speak for themselves; no fears, no hopes, no will of the prisoner to falsify or to exaggerate could produce or create a resemblance of her fingerprints or change them in one line, and therefore, there is no danger of error being committed, or untruth told.

"The taking of fingerprints is not a violation of the spirit or purpose of the constitutional inhibition. 'The scope of the privilege, in history and in principle,' says Greenleaf, 'includes only the process of testifying, by words of mouth or in writing; i. e., in process of disclosure by utterance. It has no application to such physical, evidential circumstances as may exist on the witness' body or about his person.' Vol. 1, § 469e (16th Ed.). It would be a forced construction to hold that by fingerprinting the defendant was required to furnish evidence against herself. Such is not the case. The defendant was already in the case. The court merely makes inquiry by physical examination and records the same as to her identity while it detains her. It might as well be urged

that by her arrest the defendant was deprived of her constitutional rights, because her body is produced before the court."

In the case of *United States* v. *Kelly* (C. C. A.), 55 Fed. (2d) 67 (83 A. L. R. 122), Circuit Judge Hand, in reversing the district court's order to the United States attorney directing that the defendant's fingerprints be returned to him, stated:

"Any restraint of the person may be burdensome. But some burdens must be borne for the good of the community. * * * The slight interference with the person involved in fingerprinting seems to us one which must be borne in the common interest. * * *

"The appellee argues that many of the statutes and the decisions in common-law States have allowed fingerprinting only in the case of felonies. But, as a means of identification, it is just as useful and important where the offense is a misdemeanor, and we see no valid basis for a differentiation. In neither case does the interference with the person seem sufficient to warrant a court holding fingerprinting unjustifiable. It can really be objected to only because it may furnish strong evidence of a man's guilt. It is no more humiliating than other means of identification that have been universally held to infringe neither constitutional nor common-law rights. Fingerprinting is used in numerous branches of business and of civil service, and is not in itself a badge of crime. As a physical invasion it amounts to almost nothing, and as a humiliation it can never amount to as much as that caused by the publicity attending a sensational indictment to which innocent men may have to submit."

See, also, *State* v. *Cerciello*, 86 N. J. Law, 309 (90 Atl. 1112, 52 L. R. A. [N. S.] 1010); *Garcia* v. *State*, 26 Ariz. 597 (229 Pac. 103); but *contra*, *People* v. *Hevern*, 127 Misc. Rep. 141 (215 N. Y. Supp. 412).

While it is the thought of the writer that the taking of fingerprints or palm prints, voluntary or otherwise, infringes upon no constitutional right, the fact question raised renders a determination of this issue unnecessary. The testimony of the officer on preliminary examination shows that the defendant voluntarily submitted to the taking of his palm print. The affidavit of defendant attached to his motion, however, avers compulsion. In view of the fact question raised, under the rule laid down in *People* v. *Prestidge,* 182 Mich. 80, the decision as to whether or not the taking of the print was voluntary may properly be left to the determination of a jury. This rule is well established. See, *People* v. *Corder,* 244 Mich. 274, 285; *People* v. *Lipsczinska,* 212 Mich. 484; *People* v. *Johnson,* 215 Mich. 221; *People* v. *Best,* 218 Mich. 141; *People* v. *Baker,* 251 Mich. 322, and *People* v. *Cammarata,* 257 Mich. 60.

We are satisfied that fingerprints and palm prints are a more certain and exact method of identification than a comparison of color of hair and eyes, height, weight and even physical defects. Their use affords more protection to the innocent than do the more usual and accepted modes of identification, and there is no reason why the police, in their unending war on crime, should be deprived of the use of well-tested scientific means as aids in the detection and apprehension of criminals.

The evidence offered by the people is sufficient to constitute a showing of probable cause. The trial judge is directed to reinstate the information and a writ of mandamus may issue if such be necessary.

Nelson Sharpe, C. J., and Potter, North, Fead, Wiest, Butzel, and Edward M. Sharpe, JJ., concurred.