PEOPLE v WILLIS

1. APPEAL AND ERROR—CRIMINAL LAW—FINGERPRINTS—POINTS OF
   SIMILARITY—PRESERVING QUESTION.

   A claim on appeal that fingerprint exhibits produced at trial and
   expert testimony based thereon establishing five clear points of
   similarity between a latent fingerprint and a known print were
   insufficient to establish guilt as a matter of law, which was not
   raised in the lower court cannot be considered in the appellate
   court.

2. CRIMINAL LAW—EVIDENCE—EXPERT TESTIMONY—FINGERPRINTS—
   WEIGHT OF TESTIMONY—JURY.

   The evidence of experts as to the identity of latent and actual
   fingerprints is a proper subject for the consideration of a jury,
   and the weight to be given such testimony is for the jury to
   determine.

3. CRIMINAL LAW—FINGERPRINTS—CONVICTION—SCENE OF CRIME—
   TIME OF CRIME—JURY QUESTION.

   The general rule concerning conviction by fingerprints alone is
   that to warrant a conviction the fingerprints corresponding to
   those of the accused must have been found in the place where
   the crime was committed under such circumstances that they
   could only have been impressed at the time the crime was
   committed, and whether a defendant could reasonably have
   placed his prints at the scene innocently before or after the
   crime is a question for the jury.

4. CRIMINAL LAW—EVIDENCE—FINGERPRINT CARD—PRIOR ARREST—
   PRESERVING QUESTION.

   A defendant, was not prejudiced by the admission at trial of a
   fingerprint card made during a prior arrest where all informa-
   tion on the card relating to the arrest was pasted over pursu-

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 545.
[2, 3] 30 Am Jur 2d, Evidence § 1144.
[4] 29 Am Jur 2d, Evidence § 322.
[5] 29 Am Jur 2d, Evidence § 320.
[6] 75 Am Jur 2d, Trial § 261.

ant to defense counsel's suggestion and no objection was made to its admission.

5. CRIMINAL LAW—EVIDENCE—PRIOR CONVICTIONS—PRESERVING QUESTION—FAILURE TO OBJECT—CURATIVE INSTRUCTION.

A nonresponsive, oblique reference by a witness to a prior conviction of the defendant did not result in an unfair trial where defense counsel did not object at the time of the statement and later refused the court's offer of a curative instruction.

6. CRIMINAL LAW—APPEAL AND ERROR—PROSECUTORS—CLOSING ARGUMENT—BELIEF OF GUILT—PRESERVING QUESTION—THEORY OF CASE.

A statement by the prosecution made during closing argument concerning the guilt of the defendant will not result in reversal on appeal where no objection was registered by defense counsel when the statement was made and where the statement when read in its proper context is clearly not one of personal belief but is rather an explication of the prosecutor's theory of the case.

Appeal from Berrien, Chester J. Byrns, J. Submitted Division 3 February 4, 1975, at Grand Rapids. (Docket No. 18734.) Decided April 7, 1975.

Ollie Willis, Jr., was convicted of breaking and entering an occupied dwelling. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John A. Smietanka,* Prosecuting Attorney, and *John F. Sullivan,* Assistant Prosecuting Attorney, for the people.

*John A. Lydick,* Assistant State Appellate Defender, for defendant.

Before: BRONSON, P. J., and M. F. CAVANAGH and D. F. WALSH, JJ.

BRONSON, P. J. Defendant-appellant, Ollie Willis, was convicted by jury verdict on July 18, 1973, of

breaking and entering an occupied dwelling with intent to commit larceny, MCLA 750.110; MSA 28.305. He was sentenced on August 13, 1973, to a term of from two to ten years in prison and appeals by right.

A metal candy box was found in the backyard of the burglarized residence, a few feet from the back door. A fingerprint lifted[1] from the candy box was the only evidence identifying Willis as the person responsible for what was clearly a breaking and entering. This latent fingerprint was compared with a fingerprint of Willis' right index finger which had been "rolled" on a fingerprint card by police authorities. A fingerprint expert, Captain Gerald Hass of the Berrien County Sheriff's Department, had made the comparison and testified at trial that in his opinion the latent fingerprint had been made by Willis. Although the record does not indicate exactly how many points of similarity between the latent and rolled fingerprints Captain Hass discovered,[2] it is clear that at least five points of similarity were noted. For purposes of argument on appeal, we assume that the conclusion that the latent fingerprint was Willis' was based on five points of similarity.

Willis argues, marshalling an impressive array of treatise writers and fingerprinting authorities in his behalf,[3] that five points of similarity between a

---

[1] For description of the procedure, *see People v Cullens,* 55 Mich App 272, 273, fn 1; 222 NW2d 315 (1974).

[2] At one point in his testimony, Captain Hass states that there were 11 or 12 points in common between Willis' known print and the latent one. Later, he mentions that there are eight or nine points of similarity. At the preliminary exam, he testified to "at least half a dozen" and "undoubtedly more" points in common. Our independent examination of photocopied reproductions of the fingerprints reveals at least five clear points of comparison.

[3] Cherill, *The Fingerprint System at Scotland Yard* (H. M. Stationery Off ed 1954); F.B.I. pamphlet, *The Science of Fingerprints* (1973); Fox and Cunningham, *Crime Scene Search and Physical Evidence*

latent fingerprint and a known fingerprint are insufficient as a matter of law to permit the conclusion that the same person is represented by each print.

This contention is belatedly raised. Willis did not object to the admission at trial of either the fingerprint exhibits or the expert testimony based thereon; nor did he attempt to introduce, through expert testimony or otherwise, any of the documentary evidence which he now seeks to have us cite with · approval.[4] His failure to present this argument at the trial court level is fatal:

"It is well settled that a claim on appeal, made for the first time in the appellate court, which was not raised in the court below, cannot be considered in the appellate court. [Citations omitted.]" *People v Eroh,* 47 Mich App 669, 675; 209 NW2d 832 (1973).[5]

We note that we have found no case in which a minimum standard for fingerprint comparisons has been established. There is considerable difference of opinion among the acknowledged authorities on the question of whether any minimum standard can reasonably be set.[6] Indeed, we have discovered two instances in which five points of

---

*Handbook* (1973); Frankell, *Fingerprint Expert* (Gainor Press ed. 1932); Moenssens, *Fingerprints and the Law* (Chilton ed. 1969).

[4] He did endeavor to impeach Hass' testimony during cross-examination by brief reference to certain portions of Professor Moenssens' book, *Fingerprints and the Law* (Chilton ed. 1969).

[5] *See, also, People v Williams,* 26 Mich App 218, 231; 182 NW2d 347 (1970), where this Court refused to consider defendant's contention that ten points of similarity between latent and known fingerprints was legally insufficient, because it was not raised in the trial court.

[6] *Compare* International Association for Identification, Standardization Committee Report, FBI Law Enforcement Bulletin (October, 1973) with Moenssens, *Admissibility of Fingerprint Evidence and Constitutional Objections to Fingerprinting Raised in Criminal and Civil Cases* 40 Chicago-Kent L Rev 85, 108–109 (1963).

similarity were deemed sufficient to support the claim of identity and one case in which that standard would have been adequate.[7]

Captain Hass was a well-qualified expert, with more than 23 years of practical experience and over 20,000 comparisons to his credit. He was convinced that both the latent and known prints belonged to Willis.

Under these circumstances, we are obliged to affirm the trial judge's decision to admit into evidence the latent fingerprint taken from the stolen candy box and the testimony identifying Willis as its owner:

"The evidence of experts as to the identity of latent and actual [finger]prints is a proper subject for the consideration of a jury, and the weight to be given such testimony is for the jury to determine." *People v Les,* 267 Mich 648, 652; 255 NW 407 (1934).

Willis' next assertion of error also involves the latent fingerprint. He maintains that two other possible explanations for the presence of his fingerprint on the candy box, both consistent with his innocence, were not rebutted by the prosecution. Willis could have touched the box either prior to the offense or after others had dropped it outside the house. Either of these explanations is said to raise to reasonable doubt level the sufficiency of

---

[7] *Breeding v State,* 220 Md 193; 151 A2d 743 (1959) (five points sufficient); *Commonwealth v Walker,* 178 Pa Super 522; 116 A2d 230 (1955) (four points sufficient); *Humphrey v State,* 485 P2d 782 (Okla Crim, 1971) (nine points found, only five said to be necessary by expert). We have found two Michigan cases in which the number of points of similarity is mentioned, *People v Les,* 267 Mich 648; 255 NW 407 (1934) (15 points), and *People v Williams, supra,* fn 5 (10 points). Most decisions in Michigan and elsewhere do not bother to include the information because it is not an issue in the case. *But, see, Grice v State,* 142 Tex Crim 4; 151 SW2d 211 (1941) (18 points); *People v Buckowski,* 37 Cal 2d 629; 233 P2d 912 (1951) (26 points); *People v Abner,* 209 Cal App 2d 484; 25 Cal Rptr 882 (1962) (12 points).

the evidence supporting the verdict of guilty. On that basis Willis seeks to have this Court upset the jury's determination. This we refuse to do. The general rule concerning conviction by fingerprints alone was adopted by this Court in *People v Ware,* 12 Mich App 512, 515; 163 NW2d 250 (1968), citing 28 ALR2d 1154:

" 'To warrant a conviction, the fingerprints corresponding to those of the accused must have been found in the place where the crime was committed under such circumstances that they could only have been impressed at the time the crime was committed.' "

The box from which the latent fingerprint was taken had been kept in a bureau drawer in the owner's house for over a year, ever since the box had been received as a gift from a friend. Whether Willis could reasonably have touched the box prior to its coming into the possession of its present owners in such a way that his fingerprint would remain[8] was a jury question. Similarly, whether Willis innocently touched the box after the burglary, given the limited three-hour period the victims were away from their home and the close proximity of the box to the house, was also a question to be answered by the trier of fact. The jury was given the instruction approved in *Ware* and a proper instruction on circumstantial evidence. Its determination that the alternative explanations offered by Willis did not create a reasonable doubt about his guilt will not be disturbed.[9]

---

[8] Captain Hass testified that a fingerprint could remain on an object 20 years, if the object is in a vacuum.

[9] Willis testified that he had never been anywhere near the burglarized residence on the night of the crime or any other time. This testimony clearly served to discredit one of his alternative explanations. However, we have not considered any of the evidence intro-

The other six alleged errors will not be given extended treatment, since they do not constitute serious attacks on the integrity of Willis' conviction.

A fingerprint card, made during a 1964 arrest of Willis, was admitted at trial. All of the information on the card showing Willis to have been arrested was pasted over, pursuant to a suggestion made by defense counsel. The card was then introduced without objection. There was no prejudice. *Cf. People v Heller,* 47 Mich App 408, 411; 209 NW2d 439 (1973) (edited mug shot properly admitted).

A prosecution witness made a nonresponsive, rather oblique reference to one of Willis' prior sentences.[10] Defense counsel did not object at the time of the statement. Rather, he later made a motion for mistrial and then refused the trial judge's offered curative instruction. We cannot say that Willis did not receive a fair trial. *See People v Foster,* 51 Mich App 213, 217; 214 NW2d 723 (1974).

The prosecutor is said to have expressed a personal belief in Willis' guilt during closing argument. Defense counsel did not consider the error serious enough to justify an objection. Nor do we. Reading the challenged portion in its proper context, it was clearly not a statement of personal belief in Willis' guilt, but rather part of an explication of the prosecution's theory of the case. Com-

duced by the defense in reaching our conclusion regarding the sufficiency of the evidence of guilt, since a motion for directed verdict of acquittal was made at the close of the prosecution's case. *See People v DeClerk,* 58 Mich App 528; 228 NW2d 447 (1975).

The evidence introduced by the prosecution was alone sufficient to warrant submitting the case to the jury.

[10] On rebuttal for the prosecution, a police officer stated that Willis' wife told him Willis could not have been involved because he was on probation.

pare *People v McCoy,* 392 Mich 231, 239–240; 220 NW2d 456 (1974), with *People v Duke,* 50 Mich App 714, 717; 213 NW2d 769 (1973).

There were four recesses of varying duration during the trial. The trial judge failed to warn the jury members to refrain from discussing the case prior to excusing them for any of the recesses. No such instruction was requested and no objection was ever registered to the lack thereof. The trial judge did ask, during voir dire, that the jurors not discuss the case until the proofs were closed. Willis has failed to show that he was prejudiced by the failure to repeat this warning before each recess. We will not reverse. *People v Scott,* 55 Mich App 739, 746; 223 NW2d 330 (1974).

Willis' claim that he was sentenced on the basis of prior convictions obtained in the absence of counsel must be presented first at the trial court level. *People v Moore,* 391 Mich 426, 440; 216 NW2d 770 (1974). His contention that the district court was without jurisdiction to bind him over for trial is without merit. *People v Milton,* 393 Mich 234; 224 NW2d 266 (1974).

Affirmed.