# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THOMAS LEE WINGARD,

        Defendant-Appellant.

UNPUBLISHED
January 14, 2016

No. 323316
Wayne Circuit Court
LC No. 13-009150-FC

Before: RONAYNE KRAUSE, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

Defendant, Thomas Lee Wingard, was convicted of second-degree murder, MCL 750.317, and sentenced to 15 to 25 years' imprisonment. He appeals as of right from his August 14, 2014 judgment of sentence. We affirm.

## I. BACKGROUND

At approximately 6:00 a.m. on August 18, 2013, Detroit Police Officers DeAndre Gaines and Darrell Lightfoot were dispatched to 2277 Longfellow Street in Detroit, Michigan. Upon arriving at the scene, defendant made contact with the officers and identified himself as the individual who had called 911. According to defendant, he and his wife had been living in a recreational vehicle (RV) behind the house at the Longfellow address since a 2009 house fire. He explained to the officers that he awoke at 3:36 a.m. on the 18th after hearing his dogs barking, took his dogs from the RV into the house to eat, worked on the house's water heater for approximately an hour, and then returned to the RV. When he returned to the RV, defendant noticed that the RV door was open and found his wife's body in a pool of blood on the bed inside. Defendant indicated that he immediately called 911 and performed cardiopulmonary resuscitation (CPR) until the officers arrived. The officers found a bloody, 21-and-a-half-inch pipe underneath defendant's wife's body at the scene.

On August 22, 2013, defendant contacted Detroit Police Officer Nancy Foster, the officer in charge on this case, and requested permission to obtain his wallet. Foster agreed, and defendant retrieved his wallet from her on the same day. The only exchange between Foster and defendant during this interaction was defendant "ask[ing] how the investigation was going," and

Foster replying that "it was still being investigated." Shortly after leaving, however, defendant returned to the police station and asked to speak with Foster. Foster advised defendant of his *Miranda*[1] rights, and defendant agreed to make a statement and initialed and signed a form indicating the same. Defendant answered several questions in similar fashion to the statement he had made to the officers on August 18, 2013.[2] He added, however, that earlier on the 18th, "a man" had come to his home, spoke with his wife, and inquired as to whether they had "any work" available. After signing his statement, Foster asked defendant if he would be willing to return for a second interview at a later date, and defendant agreed to do so.[3]

The second interview took place on August 28, 2013, at the Dearborn Police Department, and defendant was transported by Foster and another officer to that location. Upon arriving, defendant agreed to participate in a polygraph examination with an individual who is only referred to as "Sergeant Gee" in the record. It appears that the polygraph examination lasted from "about" 5:00 p.m. until approximately 11:30 p.m. After that interview, defendant again agreed to make a statement to Foster after being advised of his *Miranda* rights. During trial, Foster described that statement as follows:

> *Prosecutor*: All right. Can you please again review, go in question and answer format beginning on the page right after the advice of rights page.
>
> *Foster*: Yes. The first question is "tell me what happened to your wife on August 18th, 2013 when you turned the lights on in your RV and saw her bloody?
>
> "Answer. I woke up around 3:36 a.m. and touched Maryann and she was wet. I turned the lights on and I saw that she was bloody and a pipe was in the bed with her. She slept next to the window and the pipe was between her and the window.
>
> "Question. In an earlier interview you told me that you took the dogs in the house to feed them. Was that true?
>
> "Answer. No. I don't know.

---

[1] *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[2] Defendant's statement on the 22nd varied in minor ways from that on the 18th. For example, on the 22nd, he stated that, rather than working on the house's water heater while his dogs ate shortly before his wife was murdered, he cleared space in the basement to do so the following morning.

[3] It is worth noting that, between the two interviews, defendant called 911 and reported that someone had broken into his RV but had not stolen anything. Defendant indicated, however, that the intruder had wrote "you'll be next" in orange on the RV's door and apparently left the marker used to write it.

"Question. You also said that no one broke into the RV and the only person that could have killed her was you?

"Answer. Yes. It has to be.

"Question. Did you also say that you went to bed with Maryann around 10:00 p.m. and woke up around 3:36 a.m. and no one else was in the RV?

"Answer. Right. Another thing is I went in the house, but I didn't remember going in there. But there was a clear space to fix my water heater, but I don't remember of [sic] doing it.

"Question. You know why you killed your wife?

"Answer. No. Not at all. Things seemed to be coming together with the money and all and the house and the lawsuit over -- an [sic] lawsuit over with.

"Question. Do you know why you lied to me about going in the house and someone else come to the RV and kill Maryann?

"Answer. No. I guess to protect myself. That's the only, that's the only thing that I can think of.

"Question. You definitely know that no one came in your RV and killed your wife?

"Answer. I don't know, but it's the only logical explanation."

After completing his statement, defendant reviewed and signed it without making any changes. That interview lasted an additional hour. He was thereafter placed under arrest and eventually charged with first-degree murder, MCL 750.316(1)(a).

At trial, defendant testified and denied murdering his wife. He described their 36-year marriage as generally positive and said that the statement above, while his, was "[t]otally almost all fabricated." He testified that Gee did not believe his original statement and made him change his mind regarding what had happened. He explained that Gee suggested to him that this was "the only possible way that that could have happened" and admitted accepting that explanation.

Defendant was found guilty of second-degree murder, MCL 750.317, but found not guilty of first-degree murder, MCL 750.316(1)(a).[4] This appeal followed.

## II. ANALYSIS

---

[4] Defendant waived his right to a jury trial, and the trial court cited a lack of evidence proving premeditation in finding defendant not guilty of first-degree murder.

## A. VOLUNTARINESS OF STATEMENT

On appeal, defendant first argues that his due process rights were violated because his August 28, 2013 statement was made involuntarily. Defendant admittedly failed to preserve this issue for appellate review. Thus, it is reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To prevail under the plain-error standard, a defendant must show that an error occurred, that the error was clear or obvious, and that the error affected defendant's substantial rights. *Id*. at 763. Further, even if these three requirements are satisfied, an appellate court must nevertheless exercise discretion in deciding whether to reverse. *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when the error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (citations and internal quotation marks omitted; alterations by *Carines* Court).

Both the federal and state constitutions prohibit compelled self-incrimination. Const, Am V; Const 1963, art 1, § 17. An accused's statements made during a custodial interrogation are inadmissible unless he or she voluntarily, knowingly, and intelligently waives his or her Fifth Amendment rights. *Miranda*, 384 US at 444; *People v Abraham*, 234 Mich App 640, 644; 599 NW2d 736 (1999). Whether a defendant's statement was knowing, intelligent, and voluntary is a question of law that we review under the totality of the circumstances. *Abraham*, 234 Mich App at 644-645. "The test of voluntariness is whether, considering the totality of the circumstances, the confession is the product of an essentially free and unconstrained choice by its maker, or whether the accused's will has been overborne and his capacity of self-determination critically impaired." *People v Givans*, 227 Mich App 113, 121; 575 NW2d 84 (1997).

In determining whether a statement is voluntary, courts should consider a variety of factors such as the accused's age, education or intelligence level, and police experience; the prolonged or repeated nature of questioning; the detention's length; whether law enforcement advised the accused of his or her rights; whether there was any unnecessary delay; whether the accused was injured, intoxicated, or otherwise unhealthy; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused or threatened with the same; and any other relevant factors. *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988); *People v Tierney*, 266 Mich App 687, 708; 703 NW2d 204 (2005). No single factor is, in and of itself, dispositive. *Cipriano*, 431 Mich at 334; *Tierney*, 266 Mich App at 708. Instead, the ultimate question is "whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made." *Cipriano*, 431 Mich at 334.

Here, the totality of the circumstances surrounding defendant's statement indicate that it was freely and voluntarily made. Defendant, a then-63-year-old school administrator with a Master's Degree in Education Administration, voluntarily drove himself to the police station to give a second statement to Officer Foster. While defendant indicates that he has no prior involvement with police, he had spoken with various police officers on multiple occasions throughout the investigation in this matter. Moreover, on more than one occasion, including on August 28, 2013, defendant was provided a written copy of, signed, and agreed to waive his *Miranda* rights. Defendant admittedly was not on any medications or intoxicated during the August 28, 2013 interview, and, while he claims that he was deprived of food and water during the polygraph examination and post-polygraph interview, he made no such claim during trial

and, in fact, declined Foster's offer for food prior to the polygraph examination on August 28, 2013. Indeed, defendant even admitted on cross-examination that he was not forced to make additional statements and that he signed and understood every page of the written August 28, 2013 statement. Therefore, we conclude that, based on the totality of the circumstances, defendant's statement was freely and voluntarily made.

Defendant's primary argument against this conclusion focuses on the combined length of the polygraph examination and post-polygraph interview. However, as stated above, the length of the detention is one of many factors that should be considered in determining the voluntariness of a statement. *Cipriano*, 431 Mich at 334; *Tierney*, 266 Mich App at 708. Thus, while the cumulative length of the polygraph examination and post-polygraph interview exceeded seven hours, there is nothing in the record to suggest that defendant's will had been overborne or that his capacity of self-determination was critically impaired. *Givans*, 227 Mich App at 121. Conversely, defendant agreed to attend the interview, declined invitations for food and drink, and expressed no disagreement with his statement after the fact. Even at trial, defendant did not raise any concerns over the length of the interview or the voluntariness of his statement. In fact, he recalled the cumulative length of the interviews as being shorter than they apparently were.

Defendant also argues that his August 28, 2013 statement was involuntary for a variety of reasons in his pro se Standard 4 brief filed pursuant to Administrative Order 2004-6, Standard 4. First, he argues that his statement was rendered involuntary because he was subjected to "a guilt-presumptive, confrontational, and psychologically manipulative interrogation." Specifically, he claims that he only agreed to having murdered his wife after it was suggested to him that this was the only reasonable explanation. However, the mere fact that the police misrepresent facts during an interrogation does not render an accused's statements involuntary. *People v Hicks*, 185 Mich App 107, 113; 460 NW2d 569 (1990). Moreover, absent allegations of coercion or misconduct, the use of psychological tactics during an interrogation does not render the statement obtained involuntary. *Haynes v Washington*, 373 US 503, 514-515; 83 S Ct 1336; 10 L Ed 2d 513 (1963). Defendant additionally argues that he was induced into confessing by an offer of leniency. However, the record does not support such a claim. Moreover, "a promise of leniency is merely one factor to be considered in the evaluation of voluntariness," *Givans*, 277 Mich App at 120, and, as discussed above, the totality of the circumstances indicate that his statement was freely and voluntarily made. He also contends that his statement was rendered involuntary because it was premised on statements that he made during the polygraph examination, which he claims were made without being first advised of his *Miranda* rights. However, while the record is silent as to whether defendant was advised of his *Miranda* rights before the polygraph examination, the United States Supreme Court, as well as this Court, has unequivocally recognized that polygraph examinations do not automatically render subsequent interviews involuntary. *Hicks*, 185 Mich App at 113; see also *Wyrick v Fields*, 459 US 42, 47-48; 103 S Ct 394; 74 L Ed 2d 214 (1982). Furthermore, defendant was read and waived his *Miranda* rights prior to the statement at issue, and he is unable to explain how such a warning was insufficient.

Accordingly, we conclude, based on the totality of the circumstances, that defendant's August 28, 2013 statement was freely and voluntarily made.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Relatedly, defendant also argues on appeal that his trial counsel's performance constituted ineffective assistance of counsel. An ineffective assistance of counsel claim presents a mixed question of fact and law. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). A trial court's findings of fact are reviewed for clear error. *Id*. The ultimate determination of whether counsel was ineffective is a constitutional issue that is reviewed de novo. *Id*. However, because defendant admittedly failed to preserve this issue for appellate review, our review is limited to mistakes apparent on the record. *Id*.

The right to effective assistance of counsel during a criminal trial is guaranteed by both the federal and state constitutions. US Const, Am VI; Const 1963, art 1, § 20. "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). "To succeed on a claim of ineffective assistance of counsel, the defendant must show that, but for an error by counsel, the result of the proceedings below would have been different, and that the proceedings were fundamentally unfair or unreliable." *Petri*, 279 Mich App at 410; see also *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994).

In this case, defendant first argues that trial counsel's failure to move to suppress the statement described above constituted ineffective assistance. Even if trial counsel's decision not to do so did not constitute presumptively sound trial strategy, see, e.g., *People v Henry*, 239 Mich App 140, 149; 607 NW2d 767 (1999) (stating that this Court will not second-guess matters of trial strategy), defendant's argument nevertheless must fail. "Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion." *People v Riley (After Remand)*, 468 Mich 135, 142; 659 NW2d 611 (2003). Because the totality of the circumstances indicate that defendant's August 28, 2013 statement was freely and voluntarily made, any motion by trial counsel would have been meritless. Therefore, defendant cannot demonstrate that trial counsel's performance fell below an objective standard of reasonableness.

Defendant also argues that trial counsel's failure to move to suppress the evidence of his palm print on the alleged murder weapon, the 21-and-a-half inch pipe, constituted ineffective assistance. Specifically, while he acknowledges that his palm print was, indeed, on the murder weapon, he claims that trial counsel should have moved to suppress such evidence because the prosecution failed to prove whether the palm print was left before or at the time the crime was committed. This argument is unpersuasive for a variety of reasons. Most notably, the prosecution presented sufficient evidence to establish the foundation for the weapon's admission, and any evidence regarding the time that defendant's palm print was left on it presented a question for the trier of fact. Contrary to defendant's position, it is only when the prosecution intends to prove a perpetrator's identity based on a fingerprint evidence *alone* that it must establish the fingerprint could have only been made during the commission of the crime. *People v Willis*, 60 Mich App 154, 159; 230 NW2d 353 (1975); *People v Ware*, 12 Mich App 512, 515; 163 NW2d 250 (1968). Thus, any motion by trial counsel to suppress the palm print evidence would have likewise been meritless. *Riley*, 468 Mich at 142. Therefore, defendant cannot demonstrate that trial counsel's performance fell below an objective standard of reasonableness.

In any event, even assuming that either alleged failure constituted conduct below an objective standard of reasonableness, defendant has not demonstrated that suppression of either the inculpatory statement or the palm print evidence would have affected the outcome of trial. In reaching its conclusion, the trial court expressly acknowledged that "even if we didn't have the essential confession," there was still sufficient evidence to find defendant guilty. The court referred to the discrepancies in defendant's stories to police, including, for example, the fact that there was no blood on defendant when the police arrived except for that on his hands despite the fact that he claimed to have been performing CPR on his wife until the moment they arrived, defendant's demeanor at the scene, the incredible nature of defendant's "basement" story, the lack of forced entry, the lack of apparent theft, and a variety of other evidence. Consequently, while we do conclude that trial counsel's performance did not fall below an objective standard of reasonableness, we also conclude that defendant has failed to demonstrate that the outcome of trial would have been different but for the alleged deficiencies.

Accordingly, we conclude that defendant was not denied his constitutional right to the effective assistance of counsel.

## C. *JACKSON V DENNO*

Lastly, defendant argues that he was deprived his constitutional right to have a hearing to determine the voluntariness of his confession pursuant to *Jackson v Denno*, 378 US 368; 84 S Ct 1774; 12 L Ed 2d 908 (1964). Again, defendant admittedly failed to preserve this issue for appellate review. Thus, it is reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

As defendant suggests, the United States Supreme Court has recognized that the federal constitution provides defendants the right to a fair hearing to determine whether a confession was reliable and voluntary at some point during the criminal proceedings. *Jackson*, 378 US at 337-338. The Michigan Supreme Court has held the same. *People v Walker (On Rehearing)*, 374 Mich 331, 338; 132 NW2d 87 (1965). However, it is the defendant's, not the trial court's, burden to challenge the voluntariness of a confession before such a hearing is to be held. *People v Ray*, 431 Mich 260, 269; 430 NW2d 626 (1988). Indeed, the United States Supreme Court has specifically recognized that "the Constitution does not require a voluntariness hearing absent some contemporaneous challenge to the use of the confession." *Wainwright v Sykes*, 433 US 72, 86; 97 S Ct 2497; 53 L Ed 2d 594 (1977).

Recognizing that he did not challenge the voluntariness of his statement before the trial court, defendant relies on the "alerting circumstances" exception to the general rule set forth above. The narrowly construed "alerting circumstances" exception provides that a defendant is not required to challenge the voluntariness of a statement "where the factual situation itself raises a substantial question of voluntariness." *Ray*, 431 Mich at 269, citing *People v Hooks*, 112 Mich App 477, 480; 316 NW2d 245 (1982). That is, when "[t]he weakened mental and physical state of the defendant [is] sufficient to present 'an alerting circumstance which should have triggered the court's *sua sponte* inquiry into the voluntariness of the statement,' " *Ray*, 431 Mich at 270-271, quoting *Hooks*, 112 Mich App at 482, the general raise-or-waive rule does not apply.

In this case, we conclude that the "alerting circumstances" exception is inapplicable. Stated simply, there were no alerting circumstances present in this case. The cumulative length of the polygraph examination and post-polygraph interview was approximately seven-and-a-half hours. As discussed in great detail above, the record does not support, or even lend itself to, a conclusion that defendant's August 28, 2013 statement was involuntary. The factual discrepancies between the facts of this case and those of *Hooks* best demonstrate the weakness in defendant's argument. In that case, the alerting circumstances consisted of an interview only eight hours after a defendant was seriously wounded in the chest and struck in the head. *Hooks*, 112 Mich App at 481-482. At the time the defendant made the statement, he was attached to life support, had various tubes attached to his body, was under medication and in pain, and was both physically and mentally weakened. *Id*. at 482. In this case, however, the polygraph examination and post-polygraph interview were seven-and-a-half hours long, and there is nothing, aside from defendant's claims on appeal regarding the length, to suggest that it was anything less than freely and voluntarily made.

Accordingly, we conclude that defendant was not deprived his constitutional right have a judge determine the voluntariness of his confession as described in *Jackson v Denno*.

## III. CONCLUSION

In sum, because defendant's August 28, 2013 statement was freely and voluntarily made, because defendant was not denied his constitutional right to the effective assistance of counsel, and because defendant was not denied his constitutional rights as described in *Jackson v Denno*, we affirm his conviction and sentence.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien

-8-