PEOPLE v HELLER

1. Criminal Law—Evidence—Admissibility—Mug Shots—Prior Convictions—Prejudice.

An unedited mug shot would impermissibly place a defendant's prior conviction, if any, before the trier of fact and result in prejudice, requiring a reversal, where a defendant has not taken the stand.

2. Criminal Law—Evidence—Admissibility—Mug Shots—Defendant Testifying—Prejudice—Prior Convictions.

An edited mug shot of a defendant, with the police number and chain holding the number deleted, introduced into evidence during cross-examination of the defendant did not result in prejudice requiring a reversal because even though the defendant took the stand and became subject to impeachment via his prior convictions, the mug shot was edited, thus preventing any inference of a prior conviction.

Appeal from Recorder's Court of Detroit, Samuel H. Olsen, J. Submitted Division 1 February 7, 1973, at Detroit. (Docket No. 14156.) Decided May 24, 1973.

Daniel Heller was convicted of rape. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

Reference for Points in Headnotes
[1, 2] 21 Am Jur 2d, Criminal Law § 585.

*Raymond L. Miller,* for defendant on appeal.

Before: T. M. BURNS, P. J., and BASHARA and ADAMS,* JJ.

T. M. BURNS, P. J. The defendant was convicted by a jury of rape.[1] He was sentenced to a term of from 5-1/2 to 15 years imprisonment and now appeals.

The victim of the rape testified that on December 9, 1970, as she was unlocking the door of her automobile the defendant, whom she had seen standing in front of a store a few minutes before, approached, put a knife to her back, and told her to get into the auto if she wished to live. The victim complied. Defendant then drove the auto several blocks, parked at the side of a well-lighted street, and forced the victim to submit to sexual intercourse in the back seat of the vehicle. Thereafter the victim returned home, and the incident was reported to the police.

After examining two books of mug shots the following day, the victim informed the police that to the best of her knowledge the assailant's picture was not in these volumes. Subsequently, a lineup was conducted. Again the victim failed to identify any of the participants as her assailant. The victim related at trial that the defendant did not appear in the lineup. A week or two later the police went to the victim's home and showed her five or six mug shots. She could not pick out her attacker from these pictures and testified at trial that the defendant's picture was not among these mug shots. In the middle of January the police showed the victim another group of mug shots.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 750.520; MSA 28.788.

This time the victim picked out the defendant's picture and identified him as the perpetrator of the crime. The mug shot from which she identified the defendant was taken on January 9, 1971, after the defendant had been convicted on a misdemeanor charge.

In addition, the victim testified that her assailant wore a mustache and had large bushy sideburns which were pointed and extended to the bottom of the chin. On cross-examination defense counsel attempted to cast doubt on the victim's identification of the defendant by asking questions relating to the degree of the light at the scene of the crime and whether she was too emotionally distraught to distinguish the facial features of her assailant.

The defendant interposed the defense of alibi. An alibi witness and defendant's employer stated that the defendant never had worn a mustache. Later the defendant took the stand in his own behalf and testified that he did not have a mustache on the date the rape allegedly occurred and that his sideburns only extended to the middle of his ears.

During cross-examination the defendant stated that he had not altered the length of his sideburns after the date the alleged offense occurred. Over vigorous objection by defense counsel, the trial court admitted the January 9 mug shot of the defendant into evidence. The portion of the photograph containing a police identification number and a chain holding the number had been cut off and removed. The mug shot showed that the defendant was not mustachioed but that he wore long, pointed sideburns extending down toward the chin. Defendant asserts that this photograph was calculated to inflame the minds of the jurors and

compelled them to speculate as to what had been deleted thereby resulting in an unfair trial. We disagree.

We note at the outset that where a defendant has not taken the stand, an unedited mug shot would impermissibly place the defendant's prior conviction if any before the trier of fact and result in reversible prejudice. See generally 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 436, p 534. Such is not the case here, however. Even though defendant took the stand and became subject to impeachment via his prior convictions, the police number and chain holding the number were deleted from the mug shot thus preventing any inference of a prior conviction. Therefore we are of the opinion that defendant was not prejudiced on this score.

Moreover in *People v Travier,* 39 Mich App 398, 402 (1972), where a defendant was convicted of an armed robbery of a service station, a mug shot of the defendant was identified by two of the service station attendants as a picture of the perpetrator of the crime from which they had initially identified the defendant. Before the picture was admitted, however, the trial court ordered the height markers and police identification numbers in the picture covered with opaque tape to prevent the jury from seeing them. We affirmed the conviction noting:

"We are of the opinion that it would be better if the jury was not allowed to see mug shots of the defendant. However, where, as here, defense counsel has made an issue of the witness's ability to recognize the defendant from the picture he was shown by the police, it was not improper for the trial court to admit the photos. The evidence would tend to corroborate the witness's description of the robber and establish the fact that the photos were a good likeness of the defendant. The court

did its best to disguise the portions of the pictures making them recognizable as mug shots. We find no error in the admission of the exhibits. *People v Becker,* 300 Mich 562 (1942)."[2]

As previously recounted, defendant interposed the defense of alibi. Therefore the identification of the defendant became a critical issue. Here as in *Travier* the victim initially identified the defendant from a mug shot introduced into evidence. Although the mug shot in the instant case was not admitted into evidence until after the victim testified, defense counsel inferentially raised the question of the victim's ability to recognize the defendant from the picture by attempting to impugn the ability of the victim to identify the defendant at all. Finally the mug shot in question tended to corroborate the victim's identification testimony and was properly edited to dispel any undue prejudice to the defendant. Accordingly, we conclude that the trial court did not err by admitting defendant's mug shot into evidence.

Affirmed.

All concurred.

---

[2] *Becker* involved the admission of photographs of a gun and the deceased and not a mug shot.