*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 30, 2020

Plaintiff-Appellee,

v

No. 345697
Cass Circuit Court
LC No. 17-010107-FC

JOSEPH ALAN CRAIGO,

Defendant-Appellant.

Before: BORRELLO, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

A jury convicted defendant of first-degree murder, MCL 750.316(1)(a); carrying a dangerous weapon with unlawful intent, MCL 750.226; assault with a dangerous weapon (felonious assault), MCL 750.82; and interfering with electronic communications, MCL 750.540(5)(a). The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to life imprisonment for first-degree murder, 7 to 20 years' imprisonment for carrying a dangerous weapon with unlawful intent, 536 days for felonious assault, and 536 days for interfering with electronic communication. Defendant appeals as of right. We affirm.

Defendant's convictions arise from the stabbing death of his father, Alan Craigo. At trial, defendant admitted that he killed Alan, but he claimed that Alan attacked him and that the killing was done in self-defense. In contrast, the prosecutor presented evidence that defendant went to his parents' home looking for items to sell; that defendant grew upset when Alan refused to give him the property he wanted; and that defendant then attacked Alan, placing him in a headlock before repeatedly stabbing him. There was also evidence that defendant brought the knife with him to his parents' home, that defendant was overhead by a neighbor saying he was going to "kill" someone, and that defendant tried to prevent his mother, Ellen Craigo, from calling for help. The jury convicted defendant as noted.

## I. PHOTOGRAPHS

On appeal, defendant first argues that the trial court committed plain error by admitting (1) 135 crime scene photos, (2) 21 autopsy photos, and (3) a photograph of defendant. Alternatively,

-1-

defendant contends that defense counsel provided ineffective assistance by failing to object to this evidence. We disagree.

As an initial matter, we note that defendant waived review of his evidentiary claim when his attorney affirmatively stated "no objection" when the prosecutor moved to introduce the photos in question. See *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000); see also *People v McDonald*, 293 Mich App 292, 295; 811 NW2d 507 (2011) (concluding that an affirmative statement of "no objection" waived evidentiary error). Defendant's waiver extinguished any error. See *Carter*, 462 Mich at 215. Our review of this issue is, therefore, limited to defendant's ineffective assistance claim.

"To establish ineffective assistance of counsel, defendant must show (1) that defense counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's errors, a different outcome would have resulted." *People v Jackson*, 292 Mich App 583, 600-601; 808 NW2d 541 (2011). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). "[C]ounsel is not ineffective for failing to raise meritless or futile objections." *Id*. at 245.

To determine whether defense counsel provided ineffective assistance by failing to object to the photographs, we begin by considering the admissibility of these photographs. "Photographic evidence is generally admissible as long as it is relevant, MRE 401, and not unduly prejudicial, MRE 403." *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Under MRE 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

## A. CRIME SCENE AND AUTOPSY PHOTOS

In general, photographs depicting the nature and extent of a victim's injuries may be probative of the defendant's mental state and his or her intent to kill, and photographs of injuries may also be useful to establishing a victim's cause of death. *People v Head*, 323 Mich App 526, 541; 917 NW2d 752 (2018); *Gayheart*, 285 Mich App at 227. "Photographs may properly be used to corroborate other evidence and are not excludable simply because they are cumulative of a witness's oral testimony." *Gayheart*, 285 Mich App at 227. Further, "[g]ruesomeness alone need not cause exclusion." *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995).

> [P]hotographs that are merely calculated to arouse the sympathies or prejudices of the jury should not be admitted. However, if a photograph is otherwise admissible for a proper purpose, it is not rendered inadmissible merely because it brings vividly to the jurors the details of a gruesome or shocking accident or crime. [*Head*, 323 Mich App at 541 (quotation marks and citation omitted).]

"The proper inquiry is always whether the probative value of the photographs is substantially outweighed by unfair prejudice." *Mills*, 450 Mich at 76.

In this case, defendant objects on appeal to the admission of crime scene photographs and photographs of Alan's autopsy. Defendant characterizes the photographs as "gruesome" and asserts that the photos should not have been admitted because they were "minimally" relevant, unfairly prejudicial, and unnecessarily cumulative. More specifically, regarding relevance, defendant contends that the photos were irrelevant because matters such as (1) Alan's cause of death, (2) the nature and extent of his injuries, (3) the type of weapon used, and (4) even defendant's participation in Alan's death were undisputed.

Defendant's relevance argument lacks merit for two reasons. First, contrary to defendant's argument, regardless of whether defendant "disputed" issues such as the cause of death or the extent of Alan's injuries, in a homicide prosecution these matters—bearing on defendant's intent and other elements of the crime—were clearly at issue, and defendant cannot have the evidence excluded simply by asserting that issues were undisputed. See *Mills*, 450 Mich at 69-72 ("The prosecution must carry the burden of proving every element beyond a reasonable doubt, regardless of whether the defendant specifically disputes or offers to stipulate any of the elements.").

Second, defendant is incorrect in his assertion that the photographs depicting the crime scene and Alan's autopsy were only relevant to undisputed issues. The central dispute at trial was whether defendant acted in self-defense when he killed Alan or whether defendant was guilty of murder. In the context of a murder case involving a claim of self-defense, autopsy photos depicting the nature and extent of Alan's wounds as well as crime scene photos illustrating the layout of the home, Alan's injuries, and the extent of Alan's blood loss—particularly given evidence that defendant was uninjured and that some of Alan's wounds appeared to be defensive wounds—were relevant to the jury's assessment of (1) whether Alan or defendant was the initial aggressor, (2) whether defendant intended to kill Alan or, as asserted by defendant, defendant simply tried to get Alan "off" and "away" from him, (3) whether defendant reasonably believed he was in imminent danger, (4) whether defendant used a reasonable amount of force in responding to an alleged threat from an unarmed man, and (5) ultimately whether defendant acted in self-defense. See generally *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010). Contrary to defendant's assertion that the photos were minimally relevant, the photos had considerable probative value.[1]

Recognizing the photos' relevance and strong probative value on matters of consequence, there is no merit to defendant's assertion that unfair prejudice outweighed the probative value of the evidence. See MRE 403. Some of the photos depicting Alan's injuries and the bloody crime

---

[1] Additionally, the photos were relevant to questions of witness credibility. See *Mills*, 450 Mich at 72 ("Critical to the instant case and a fact that is also 'of consequence' to a determination is the credibility of the witnesses offering testimony."). For example, the autopsy photos were relevant to an assessment of the medical examiner's expert opinions. See *id*. ("The jury was entitled to view the nature and extent of the injuries for themselves, and not to depend solely on the testimony of the experts."). Likewise, the crime scene photos corroborated lay witness testimony. See *id*.

scene may be gruesome, but gruesomeness alone does not warrant exclusion of the evidence under MRE 403 when the photos were relevant to a proper determination of defendant's guilt. See *Mills*, 450 Mich at 79; *Head*, 323 Mich App at 541.

There is also no merit to defendant's assertion that the photographs involved the needless presentation of cumulative evidence. See MRE 403. In this regard, defendant asserts that the photos were repetitive and that the sheer volume of photographs was unnecessary. Defendant's argument, however, ignores the nature of the crime scene in this case and the sheer number of Alan's injuries. For example, regarding the autopsy photos and photos of Alan's wounds taken at the scene, the medical examiner testified that Alan suffered at least 11 injuries and that 11 would be a "conservative" estimate. In this context, 22 autopsy photos and an additional few photos at the scene depicting three separate stab wounds to Alan's abdomen and a fourth stab wound to his neck as well as numerous, relatively superficial injuries to Alan's hand, thumb, chest, arm, ear, and neck do not appear particularly cumulative or excessive. Instead, the chosen photos—showing different injuries and different angles—appear designed to allow the jury to view the nature and extent of Alan's injuries for themselves. See *Mills*, 450 Mich at 72. Likewise, the crime scene photos depict numerous and various aspects of the crime scene, the layout of the home, and the evidence recovered at the scene.[2] While defendant emphasizes the "gruesome" nature of the crime scene photos, more than 50 of the photos do not depict blood or anything that could be considered "gruesome." There are of course photos showing blood throughout the home, but the reality is that Alan bled excessively while moving around the home, and as a result, there was blood in many of the rooms in the home. Nevertheless, the fact remains that the photos depict different views and different pieces of evidence relevant to the case. The fact that many of the photos also contain blood does not render them cumulative or needlessly repetitive. Instead, the chosen photos appear designed to allow the jury to view the layout of the home, the crime scene, and the evidence recovered. MRE 403 does not warrant exclusion of this evidence.

In sum, the crime scene and autopsy photographs were relevant, see MRE 401, and not otherwise excludable under MRE 403. Consequently, the photographs were admissible. See *Gayheart*, 285 Mich App at 227. It follows that defense counsel did not perform unreasonably by failing to make a meritless objection to the admission of these photos. See *Putman*, 309 Mich App at 245. Moreover, with regard to prejudice, defendant appears to concede that at least *some* of the photos were relevant and admissible. In this context, it is challenging to see how defendant could establish outcome-determinative error on the basis that some of the pictures might have been repetitive. Indeed, defendant makes no attempt to explain how this Court should determine precisely how many photos would be too many photos. Furthermore, the testimony about the photos was not particularly prolonged, and there was no attempt to use the photos to arouse the sympathies or prejudices of the jury. See *Head*, 323 Mich App at 541. On this record, defendant

---

[2] For example, the photos included photos of (1) the outside of the front of the home, (2) the backyard and back of the home, (3) the deck, (4) the location of the knife in the driveway, (5) the knife, (6) the living room, (7) kitchen, (8) hallways, (9) walls, (10) the bedroom, (11) bathroom, (12) closets, (13) furniture, (14) the safe, (15) keys, (16) phones, (17) a computer screen, (18) doors, (19) entryways, (20) blood trails, (21) blood patterns, and (22) the location of Alan's body.

has not shown outcome-determinative error, and he has not shown that he was denied the effective assistance of counsel.  See *Jackson*, 292 Mich App at 600-601.

## B.  PHOTO OF DEFENDANT

Defendant also contends that defense counsel provided ineffective assistance by failing to object to the admission of a photograph of defendant.  Defendant characterizes the picture as a "mug shot" depicting defendant in a prison "jumpsuit," and defendant asserts that the photo was irrelevant and that presenting the jury with the photo was tantamount to requiring him to appear at trial in prison garb.  The photo shows defendant wearing orange.  However, only the collar of the shirt is visible, and it is not apparent whether the orange collar belongs to an ordinary shirt or a prison "jumpsuit."  There are no identifiable prison numbers or other police information visible on defendant's clothing or otherwise in the photo.  The background in the photo is a bare, plain wall.

According to the testimony at trial, the photograph in question showed defendant's appearance as he looked at the time of Alan's death in March 2017.  As compared to defendant's clean-shaven face and close-cropped hair at the time of trial, the image of defendant from March 2017 showed defendant with bushier, curly hair and a beard.  In this context, the prosecutor used the photo for identification purposes when questioning witnesses, such as police officers and the phlebotomist who drew defendant's blood in March 2017.  Indeed, when asked to identify defendant, several of the witnesses noted that defendant's appearance had changed.  For example, when asked to identify defendant in court, the phlebotomist who drew defendant's blood stated that defendant looked "a little different" at trial than he did when she drew his blood in March 2017.  She then identified him from the photo.  A police detective who interviewed defendant the night of Alan's death also testified that defendant may have "possibly" had a beard in March 2017, and he then confirmed that the photo showed how defendant looked on March 27, 2017.  Given the change in defendant's appearance between March 2017 and trial, the photo illustrating that change was generally relevant to the witnesses' identification of defendant and the witnesses' respective assertions that the man sitting at the defense table during trial was the man they interviewed or subjected to a blood draw, etc.  See MRE 401.

In contrast, in contesting the admission of the photo, defendant makes two basic arguments.  First, he asserts that the photo was irrelevant because his identity as the killer was not at issue.  However, when a defendant pleads not guilty, all the elements of an offense, including identity, are at issue.  See *Mills*, 450 Mich at 70; see also *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008) ("[I]dentity is an element of every offense.").  Moreover, even if defendant's identity as the killer was not specifically disputed in this case, the witnesses' identification of defendant was relevant to their credibility.  In other words, photographic corroboration for various witnesses' assertions that defendant looked "different" than they remembered was relevant to the jury's assessment of the reliability and credibility of their testimony as a whole.  See *Mills*, 450 Mich at 72 ("If a witness is offering relevant testimony, whether that witness is truthfully and accurately testifying is itself relevant because it affects the probability of the existence of a consequential fact.").  There is no merit to defendant's contention that his appearance in March 2017 as shown in the photo, as compared to his appearance at trial, was wholly irrelevant.

Second, even if relevant, defendant asserts that his photo should not have been admitted because it was a "mug shot" with indicia of incarceration that unfairly prejudiced him, and denied

him due process, by suggesting that he had previously been arrested and committed a crime, thereby impermissibly clothing him as a convict in the jurors' mind. According to defendant, showing the photo to the jury was equivalent to requiring him to appear at trial in prison garb.

"Under the presumption of innocence, guilt must be determined solely on the basis of the evidence introduced at trial rather than on official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *People v Rose*, 289 Mich App 499, 517; 808 NW2d 301 (2010) (quotation marks and citation omitted). For this reason, a defendant cannot be compelled to appear at trial wearing "identifiable prison garb" before the jury. *Id*. at 517-518. In this case, although defendant compares presentation of the photo to appearing at trial in prison garb, defendant did *not* appear at trial in prison attire. More relevant to defendant's arguments, this Court has also recognized, however, that the needless presentation of an "unedited mug shot," which effectively places a defendant's *prior conviction* before the jury, results in reversible prejudice. *People v Heller*, 47 Mich App 408, 411; 209 NW2d 439 (1973).

In this case, although defendant characterizes the photo in question as a "mug shot," it does not contain any kind of police identification number, arrest information, height markers, or other "vestiges of the police department photographic techniques" suggestive of a mug shot, nor did the prosecutor refer to the picture as a "mug shot" during trial. See *id*.; *People v Travier*, 39 Mich App 398, 401; 197 NW2d 890 (1972); *People v Heiss*, 30 Mich App 126, 132; 186 NW2d 63 (1971). See also *Futrell v Wyrick*, 716 F2d 1207, 1208 (CA 8, 1983) ("The photographs were never referred to as 'mugshots' and all police data was removed from them."). Further, nothing in the photo suggests that defendant had prior criminal convictions. See *Heller*, 47 Mich App at 411. To the contrary, the photo was offered as representative of how defendant looked on March 17, 2017, the date of the *current* offense, and therefore, it does not give rise to the improper use of a *prior* conviction as described in *Heller*.[3] Cf. *State v Vanzant*, 814 SW2d 705, 707 (Mo App, 1991); *State v Clay*, 213 NW2d 473, 480 (Iowa, 1973). In short, the photo did not implicate *Heller*'s concern that an unedited mug shot amounts to improper use of prior convictions.

Additionally, although defendant asserts that the probative value of the picture was outweighed by the danger of unfair prejudice because the picture shows him in prison garb, the picture has been cropped such that the only visible portion of defendant's clothing is the orange collar of his shirt. There are no visible numbers on his clothing, and it is not apparent that he is wearing a prison "jumpsuit" as he asserts on appeal. To raise any kind of due-process concern, clothing must be "distinctive" and "identifiable" prison attire. *Estelle v Williams*, 425 US 501, 504-505; 96 S Ct 1691; 48 L Ed 2d 126 (1976). Without more, the orange collar in defendant's photo does not meet this standard. Further, even assuming that the orange collar visible in the photo would be perceived as "prison garb," the prejudice caused by brief references to the photo

---

[3] The jury was already aware by virtue of the fact that defendant was on trial that he had been arrested for the current offense. See *Rose*, 289 Mich App at 517 ("[J]urors are understood to be quite aware that the defendant appearing before them did not arrive there by choice or happenstance[.]") (quotation marks and citation omitted). "No prejudice can result from seeing that which is already known," *Estelle v Williams*, 425 US 501, 507; 96 S Ct 1691; 48 L Ed 2d 126 (1976) (quotation marks and citation omitted).

for identification purposes simply does not compare to the prejudice inherent in wearing prison garb during trial, which has been characterized as a "*continuing* influence throughout the trial" and which creates the risk that the "*constant* reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment." See *id.* (emphasis added). The photo—depicting, at most, an orange collar—was not unfairly prejudicial when briefly used for identification purposes, and its introduction did not deprive defendant of due process.

Because defendant's challenges to his photo lack merit, it also follows that defense counsel did not perform unreasonably by failing to offer a meritless objection to the photo. See *Putman*, 309 Mich App at 245. Moreover, with regard to prejudice, as discussed, the prejudice from the photo was relatively minimal, and in any event, defendant cannot plausibly claim that he was prejudiced by the possibility that the photo would cause the jury to view defendant as a criminal when defendant freely acknowledged his criminal history at trial by, for example, testifying that he owed Alan money because Alan paid his bond. On this record, defendant has not shown that he was denied the effective assistance of counsel. See *Jackson*, 292 Mich App at 600-601.

## II. PROSECUTORIAL MISCONDUCT

In his appellate brief and in a Standard 4 brief, defendant maintains that the prosecutor denied him a fair trial by (1) misstating evidence, (2) appealing to the jurors' sympathies, (3) vouching for witnesses, and (4) expressing a personal belief about defendant's credibility. Alternatively, defendant contends that defense counsel provided ineffective assistance by failing to object to the prosecutor's remarks. These arguments lack merit.

Defendant's claim of prosecutorial misconduct is unpreserved and reviewed for plain error affecting substantial rights. See *People v McLaughlin*, 258 Mich App 635, 645; 672 NW2d 860 (2003). "To avoid forfeiture of review of this issue under the plain error rule, the defendant must demonstrate that: (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected the defendant's substantial rights." *Id.* Reversal is not required "where a curative instruction could have alleviated any prejudicial effect." *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003).

"A prosecutor has committed misconduct if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014). "When reviewing a claim of prosecutorial misconduct, this Court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context." *Callon*, 256 Mich App at 330. "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial. They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008) (citations omitted).

However, a prosecutor may not make factual statements to the jury that are not supported by the evidence. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). And "[a] prosecutor may not appeal to the jury to sympathize with the victim." *Unger*, 278 Mich App at 237. Further, a prosecutor may not vouch for the credibility of a witness or suggest "some special knowledge" about whether a witness is testifying truthfully, but he or she may "argue from the

facts that a witness is credible or that the defendant or another witness is not worthy of belief." *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997).

On appeal, defendant first argues that the prosecutor misrepresented the facts by repeatedly asserting during closing arguments that defendant "stabbed" Alan 11 times. The medical testimony at trial was that Alan was stabbed four times: three times in the abdomen and once in the neck. However, the medical examiner also testified that Alan had a total of 11 wounds, including additional wounds to Alan's chest, hand, thumb, arm, behind his ear, and two cuts to his neck. Indeed, the medical examiner testified that 11 was a "conservative" estimate of Alan's total number of wounds and that all the wounds were consistent with being inflicted by a knife. Given the medical testimony that Alan had at least 11 wounds consistent with a knife, the prosecutor's remarks overall were not a misrepresentation of the facts to the extent the prosecutor mentioned 11 "sharp blows" or 11 "blows" with a knife. Indeed, while defendant quotes select passages from the prosecutor's remarks, elsewhere the prosecutor more specifically acknowledged the different nature of the wounds, noting for example the "plunging" wound to Alan's neck and the multiple "deep" wounds to his stomach as compared to a defensive "cut" to his arm and the "marks" across his neck indicating that defendant tried to "slice" Alan's neck. The prosecutor also clarified that there were "eleven stab wounds, *four* that punctured through his body." (Emphasis added.) As a whole, the prosecutor's remarks fairly and accurately acknowledged the different nature of the wounds, and defendant was not denied a fair trial.

Moreover, even if the prosecutor erred at isolated points by stating that Alan was "stabbed" 11 times, defendant is not entitled to relief on appeal when defendant failed to object and a curative instruction could have alleviated any prejudicial effect. See *Callon*, 256 Mich App at 329-330. Indeed, the jury was instructed that the lawyers' statements were not evidence and to "only accept things the lawyers say that are supported by the evidence or your own common sense and general knowledge." Jurors are presumed to follow their instructions. *Unger*, 278 Mich App at 235. And the instruction given ensured that the jury would assess the accuracy of the prosecutor's statements against the evidence. Defendant has not shown plain error affecting his substantial rights. See *McLaughlin*, 258 Mich App at 645.

Defendant also has not shown that defense counsel provided ineffective assistance by failing to object to references to Alan being "stabbed" 11 times. Had counsel objected, "[a]t best, trial counsel might have obtained a direction to the prosecutor to rephrase [her] summary, or a charge that the lawyer's arguments were not evidence." *People v Reed*, 449 Mich 375, 400; 535 NW2d 496 (1995). However, an objection leading to rephrasing by the prosecutor also could have prompted additional, more detailed discussion from the prosecutor about the nature of Alan's 11 wounds. And, when Alan in fact had at least 11 wounds consistent with a knife, a pedantic objection to the use of the word "stab" may have struck the jury as a petty interruption and an indication that defense counsel simply did not want them to hear the prosecutor's analysis of the evidence. See *id.* Defense counsel's decision not to object was a matter of strategy, see *id.*, and this decision did not prejudice defendant when the jury was in fact instructed that the lawyers' statements were not evidence.

Next, defendant contends that the prosecutor misrepresented the evidence by stating that defendant did not testify that he feared for his life. More fully, during rebuttal, the prosecutor stated:

-8-

When the Defendant testified, he didn't say, "I was afraid for my life." He said, "I was stuck in the bathroom and I just wanted to get out." Self-defense with a deadly force is not justified if you just want to get out of a room.

Defendant points to these assertions on appeal and contends that the prosecutor mispresented the facts. Initially, we note that, during his testimony, defendant repeatedly mentioned having no "way out" of the bathroom, and therefore, there was nothing improper in the prosecutor arguing that killing the unarmed Alan was not justified just so that defendant could leave the room. However, contrary to the first sentence of the prosecutor's remarks, during his trial testimony, defendant also clearly said that he was "in fear for [his] life." The prosecutor was free to contest the credibility of defendant's testimony, but to the extent that the prosecutor asserted that defendant did not make this statement at all, the prosecutor's assertion was not supported by the facts. See *Dobek*, 274 Mich App at 66.

Nevertheless, this isolated misstatement by the prosecutor does warrant relief on appeal when defendant failed to object and a curative instruction could have alleviated any prejudicial effect. See *Callon*, 256 Mich App at 329-330. Indeed, as noted, the jury was instructed to decide the case on the properly admitted evidence, that the lawyers' statements were not evidence, and to "only accept things the lawyers say that are supported by the evidence" or the jurors' common sense and general knowledge. Jurors are presumed to follow their instructions. *Unger*, 278 Mich App at 235. And the instruction given ensured that the jury would assess the accuracy of the prosecutor's statement against the evidence and disregard the prosecutor's statements not supported by the evidence. Defendant has not shown plain error affecting his substantial rights. See *McLaughlin*, 258 Mich App at 645.

Moreover, defense counsel did not provide ineffective assistance by failing to object. See *Reed*, 449 Mich at 400. Defendant's claims of self-defense were thoroughly presented to the jury, both in his testimony and during defense counsel's closing arguments, and the jury was instructed on self-defense. The jury was clearly aware of the self-defense issue to be decided, and the prosecutor's isolated misstatement about defendant's testimony did not obviate the central question before the jury. In this context, when the jury was clearly aware that defendant was claiming self-defense, there would be minimal benefit to objecting to the prosecutor's remark, and at the same time, an objection might give the appearance that defense counsel did not want the jury to hear the prosecutor's analysis. See *id*. Indeed, at best, objecting would have resulted in "a direction to the prosecutor to rephrase his summary, or a charge that the lawyer's arguments were not evidence." See *id*. But, as noted, the jury was properly instructed that the lawyers' statements were not evidence, and jurors are presumed to follow their instructions. *Unger*, 278 Mich App at 235. On this record, defendant has not shown that counsel provided ineffective assistance by failing to object to the prosecutor's remark about defendant's testimony.

Next, defendant also contends that the prosecutor impermissibly appealed to the jury to sympathize with Alan and Ellen. However, when the prosecutor's remarks are viewed as a whole and in context, the prosecutor did not impermissibly appeal to the jurors' sympathies. That is, the prosecutor did not invite the "jurors to suspend their powers of judgment and decide the case on the basis of sympathy or civic duty." *Lane*, 308 Mich App at 66. Instead, in seeking "justice" for Alan and Ellen, the prosecutor asked the jury to find defendant guilty because the evidence showed that he was guilty. See *id*. The remarks, as a whole, were not plainly erroneous. And any potential

prejudice was cured by the trial court's instructions to the jurors that they must decide the case on the basis of the evidence and the law and that they could not let "sympathy or prejudice" influence their decision. See *Unger*, 278 Mich App at 235.

Moreover, even if some of the prosecutor's remarks challenged by defendant as appeals to jurors' sympathies were better left unsaid, defense counsel did not provide ineffective assistance by choosing not to object and not to draw further attention to the prosecutor's remarks. See *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995). Defense counsel instead chose to remind the jury during his own closing that sympathy was not a proper factor in the jury's decision. Counsel's decision not unreasonable. Further, given the jury instructions to the effect that sympathy could not influence the jury's instructions, defendant cannot show he was prejudiced by counsel's failure to object. Defendant has not established the ineffective assistance of counsel.

Next, in his Standard 4 brief, defendant argues that the prosecutor impermissibly vouched for Ellen and the neighbor who testified at trial by asserting that they had no reason to lie. However, the prosecutor did not imply any special knowledge of the witnesses' truthfulness;" rather, the prosecutor permissibly commented on their credibility and argued that they had no reason to lie.[4] See *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). This was not error by the prosecutor, see *id*., and defense counsel was not ineffective for failing to offer a futile objection. See *Putman*, 309 Mich App at 245.

In his Standard 4 brief, in connection with his assertion that the prosecutor engaged in misconduct by discussing Ellen's credibility, defendant also argues that that the prosecutor argued facts not in evidence by suggesting that someone responding to the scene may have placed the home phone back in its cradle in the house. In this regard, Ellen testified that defendant took the home phone from her when he left the house, but she conceded that photos—taken hours later— showed the phone in the house. Ellen could not explain this, but she suggested that maybe an "officer" found it and brought it back inside. Commenting on this evidence during closing, the prosecutor acknowledged that she did not "have an explanation for how [the phone] showed up in the house," but the prosecutor maintained that an explanation for how the phone returned to the house was irrelevant if the jury believed Ellen's testimony that defendant took the phone from her when she attempted to call 911. Emphasizing that the photos were not taken until 3:45 a.m., the prosecutor also suggested that someone—such as ambulance personnel or a lab tech—brought it back inside. Although no one specifically testified about returning the phone to the house, the prosecutor's argument was a reasonable inference from Ellen's testimony that defendant took the phone when he left, the evidence that defendant returned to the house and was outside, the presence

---

[4] Relating to the neighbor's truthfulness, defendant offers a purported affidavit from his brother, Adam Craigo, asserting that Ellen told Adam that it was really Alan who went outside and said that he was going to "kill the mother fucker." The affidavit is not part of our review because it is not in the lower court record. See MCR 7.210(A)(1). Further, the document is not notarized, meaning that it is not a valid "affidavit." See *Detroit Leasing Co v Detroit*, 269 Mich App 233, 236; 713 NW2d 269 (2005). And, in any event, the document contains hearsay statements that are wholly immaterial to defendant's assertion that the prosecutor engaged in misconduct by arguing that the neighbor had no reason to lie. The affidavit does not aid defendant's position.

of others at the scene, and the passage of time before the photos showing the phone back in the house were taken. The prosecutor did not engage in misconduct by arguing the facts and reasonable inferences therefrom in support of her theory of the case. See *Unger*, 278 Mich App at 236. And defense counsel did not provide ineffective assistance by failing to offer a futile objection. See *Putman*, 309 Mich App at 245.

Next, in his Standard 4 brief, defendant maintains that the prosecutor impermissibly expressed a personal belief about defendant's credibility by stating that he was "not a man to be believed." However, in context, the prosecutor did not offer a personal opinion or suggest special knowledge of defendant's veracity. See *Howard*, 226 Mich App at 548. To the contrary, the prosecutor reminded the jury that it was "completely up to" the jury whether to believe defendant. And the prosecutor permissibly argued from the facts that defendant was not worthy of belief given his repeated lies and the changing nature of his story, including his "absurd" accusations against Ellen, as well as the fact that his version of events was simply "ridiculous" in that it did not make sense for Alan to give defendant a knife and then attack him for no reason whatsoever. The prosecutor was entitled to comment on credibility and to argue that defendant was not worthy of belief. See *id*. This was not error, and defense counsel did not provide ineffective assistance by failing to offer a futile objection.[5] See *Putman*, 309 Mich App at 245.

Finally, defendant asserts that the cumulative effect of the prosecutor's misconduct denied him a fair trial. "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Dobek*, 274 Mich App at 106. Even though the prosecutor made brief misstatements of fact, and even if some of the prosecutor's remarks about "justice" for Alan and Ellen were better left unsaid, the cumulative effect of these relatively minor instances did not deprive defendant of a fair trial, particularly considering the strong evidence of defendant's guilt and the exceedingly weak nature of his self-defense claim. See *id*. at 107. See also *People v Seals*, 285 Mich App 1, 25; 776 NW2d 314 (2009).

In sum, whether considered individually or cumulatively, the prosecutor's comments did not deprive defendant a fair trial, defense counsel did not provide ineffective assistance by failing to object, and defendant is not entitled to relief on appeal.

---

[5] Moreover, with regard to all of defendant's Standard 4 claims of prosecutorial misconduct, we note that the jury was instructed that they were to decide the case on the evidence presented, that the lawyers' statements were not evidence, that it was the jury's "job and nobody else's" to decide the facts of the case, and that it was the jury's "job" to decide which witnesses to believe. Jurors are presumed to follow their instructions. *Unger*, 278 Mich App at 235. And, even assuming an improper comment, these instructions were sufficient to cure such an error by the prosecutor. See *id*. Defendant cannot show plain error, and he was not denied the effective assistance of counsel.

-11-

## III. HEARSAY

Next, defendant argues that the admission of hearsay from Ellen and her daughter, Laura Marshall, constituted plain error and that defense counsel provided ineffective assistance by failing to object. We disagree.

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is not admissible except as provided by the rules of evidence. MRE 802. In contrast, statements offered for "purposes other than to prove the truth of the matter asserted," such as "to demonstrate the listener's knowledge and motives," are not hearsay and may be admitted if relevant to an issue in the case. *People v Eady*, 409 Mich 356, 361; 294 NW2d 202 (1980). For example, when motive and premeditation are at issue, a murder victim's statements to the defendant are relevant, and they do not constitute hearsay, when offered "to show the effect they had on" the defendant. *People v Fisher*, 449 Mich 441, 450; 537 NW2d 577 (1995) (compiling cases in which victims' out-of-court statements were admitted to establish motive).

In this case, defendant asserts that Alan's statements as recounted in Ellen's testimony constituted inadmissible hearsay and that defense counsel provided ineffective assistance by failing to object. Relevant to defendant's argument, Ellen testified:

> [Defendant] [s]aid if he couldn't have the bucket truck then he wanted the motorcycle, and he—but he said, "Beins' (sic) you don't have the motorcycle anymore," and Alan says, "I do have the motorcycle. I still have it, it's out in the barn." He says, "But you're not getting it right now. It's supposed to be given to you when I'm dead and I'm not dead yet."

Contrary to defendant's argument, Alan's statements as repeated by Ellen were not hearsay because the statements were not offered for the truth of the matter asserted. See MRE 801(c). Instead, as part of Ellen's other testimony regarding defendant's demands for the bucket truck and a gun as well as Alan's refusals, Alan's statements to defendant regarding the motorcycle were offered to show their effect on defendant. See *Fisher*, 449 Mich at 450. That is, Alan's statements made defendant upset; the statements provided defendant's reasons for going into the bedroom to look for the titles to the items he wanted; and the statements ultimately provided defendant a motive for being angry with Alan and wanting him dead. See *id.*; *Eady*, 409 Mich at 361. Admission of these relevant, nonhearsay statements to establish defendant's motive did not constitute plain error. See *Fisher*, 449 Mich at 450; *Eady*, 409 Mich at 361. And defense counsel did not provide ineffective assistance by failing to make a meritless objection to this relevant and admissible evidence. See *Putman*, 309 Mich App at 245.

On appeal, defendant also contends that Marshall should not have been allowed to testify about Ellen's statements to her at the scene. Specifically, Marshall testified about Ellen's description of events as follows:

> She said that [defendant] had stabbed my dad, that he went there, he asked for his kid's birth certificate and the title and followed my dad into the bedroom. She said that he had my dad in a headlock and he was hittin' him and that she went

to call 911 and then [defendant] ran up to her with a knife and grabbed the phone and told her, "Don't you call 911." She said she's never seen that look in his eyes, it was really scary. She slammed the door shut and turned around and seen (sic) my dad walking towards our—towards the bedroom from the kitchen and there was blood goin' all over the place. And she said, "I couldn't stop it, I couldn't stop it."

Although the statement constitutes hearsay, defendant cannot show plain error in the admission of the statements given the excited utterance exception to the hearsay rule set forth in MRE 803(2). Under MRE 803(2), regardless of whether a declarant is available, a statement is not excluded as hearsay provided that the statement is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

> To come within the excited utterance exception to the hearsay rule, a statement must meet three criteria: (1) it must arise out of a startling occasion; (2) it must be made before there has been time to contrive and misrepresent; and (3) it must relate to the circumstances of the startling occasion. [*People v Straight*, 430 Mich 418, 424; 424 NW2d 257 (1988) (quotation marks and citation omitted).]

In this case, there can be no dispute that Ellen's statements arose out of, and related to the circumstances of, a startling occasion—namely, the violent death of her husband. Defendant challenges the second criteria, asserting that Ellen's statement did not constitute an excited utterance because she had time to contrive and misrepresent the events. This argument lacks merit. After Alan was stabbed, Ellen called 911 and held a towel to Alan's neck, attempting to prevent him from bleeding to death. When the first officer arrived, he found her "very upset and distraught," and still applying pressure to Alan's wounds. Marshall arrived at the scene before paramedics and found Ellen and the officer still in the midst of trying to save Alan's life. When the paramedics arrived soon after, Marshall then checked on Ellen, and found her "really shaken up." The paramedics sent Marshall and Ellen to a side bedroom until someone could talk to them, and at some point, they went outside to talk to police. While still at the scene, and while Ellen was "still shaking and cryin[g] and . . . in shock," she told Marshall what happened.

On this record, there is absolutely no indication that Ellen had the time and capacity to reflect and contrive a fabricated story. See *id*. "The focus of MRE 803(2), given a startling event, is whether the declarant spoke while still under the stress caused by the startling event." *Id*. at 425. All indications in this case were that Ellen was still in shock—and still lacked the capacity to fabricate—after witnessing violence in her home and watching Alan bleed to death before her eyes. See *id*. See also *People v Green*, 313 Mich App 526, 537; 884 NW2d 838 (2015) (finding "little time to contrive and misrepresent" when statements were made "within hours" of a startling event). Under MRE 803(2), on the facts of this case, no clear or obvious error occurred in the admission of Ellen's statements to Marshall.[6] Further, because the statements were admissible under an

---

[6] On appeal, defendant also argues that the statements did not constitute present sense impressions under MRE 803(1) because the statements were not substantially contemporaneous with the events Ellen witnessed. This may be true but it is irrelevant. MRE 803(1) and MRE 803(2) are different

-13-

exception to the hearsay rule, a hearsay objection by defense counsel would have been futile, and defense counsel did not provide ineffective assistance by failing to make a meritless objection. *Putman*, 309 Mich App at 245. Defendant is not entitled to relief on appeal.

## IV. INEFFECTIVE ASSISTANCE

In his Standard 4 brief, defendant next argues that defense counsel provided ineffective assistance (1) by failing to investigate and interview defendant's girlfriend, Jessica Hill, and his brother, Adam Craigo, as potential witnesses, and (2) by failing to investigate Alan's violent nature.

"Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise." *Putman*, 309 Mich App at 248. Defendant must also establish the factual predicate for his claim. *Id.* "Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). At the same time, decisions regarding what witnesses to call and what evidence to present are presumed to be matters of trial strategy, and this Courts will not second-guess counsel on matters of trial strategy. *Putman*, 309 Mich App at 248.

In this case, defendant argues that defense counsel provided ineffective assistance by failing to interview Hill and Adam, and by failing to use their testimony at trial to impeach prosecution witnesses, to establish that defendant did not have a knife with him when he went to his parents' home, and to show Alan's violent nature by offering Hill's testimony that he previously assaulted her. However, the lower court record contains no information to support defendant's assertions that (1) defense counsel failed to interview these witnesses or that (2) Hill or Adam would have offered testimony favorable to the defense. Absent such evidence in the record, defendant cannot establish the factual predicate for his claims, he has not overcome the presumption that counsel's decisions regarding what witnesses to call and evidence to present were a matter of trial strategy, and he has not shown a reasonable probability that failure to call Adam and Hill as witnesses affected the outcome of the proceedings.[7] See *id.* at 240; *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003).

---

exceptions, and "the period of acceptable time will frequently be considerably longer under 803(2) than is acceptable under 803(1)." *Straight*, 430 Mich at 425 (quotation marks and citation omitted). In short, Ellen's statements may not have been admissible under MRE 803(1), but they were admissible under MRE 803(2).

[7] In connection with his arguments relating to Hill and Adam, defendant points to materials outside the record in an attempt to support his contentions regarding their potential testimony. Specifically, he attaches an "affidavit" from Adam, stating that Adam heard defendant complain about leaving his knife at his parents' home. However, this affidavit does not aid defendant's position because (1) it is not part of our review, see MCR 7.210(A)(1); (2) it is not notarized, meaning that it is not actually a valid "affidavit," see *Detroit Leasing Co*, 269 Mich App at 236; (3) at most, the document contains hearsay statements and defendant has not identified an

Aside from Hill and Adam, defendant asserts that defense counsel failed to investigate, and to introduce a police report at trial, relating to a previous incident during which Alan allegedly attacked a man named Davey Overholt. In actuality, defense counsel did in fact question defendant at trial about the incident with Overholt, belying defendant's claim that defense counsel failed to investigate the matter. Although defendant claims on appeal that defense counsel also should have introduced a police report, the police report is not part of the lower court record, see MCR 7.210(A)(1); and defendant has not even attempted to provide it on appeal. Accordingly, there is simply no support for defendant's assertion that there is a police reporting relating to Overholt that contained information beneficial to defendant. In any event, police reports are generally inadmissible hearsay, *In re Forfeiture of a Quantity of Marijuana*, 291 Mich App 243, 254; 805 NW2d 217 (2011), and defendant makes no attempt to identify an exception to the hearsay rule or to lay a foundation for the admission of the report. In these circumstances, defendant cannot show that counsel provided ineffective assistance relating to the incident between Overholt and Alan or in failing to seek the introduction of a police report. See *Putman*, 309 Mich App at 240; *Ackerman*, 257 Mich App at 455. Defendant's ineffective assistance claims lack merit.

## V. SUFFICIENCY OF THE EVIDENCE

Finally, in his Standard 4 brief, defendant contends that the prosecutor presented insufficient evidence to support his conviction of first-degree premeditated murder. According to defendant, the evidence shows that he acted in self-defense or, at most, in the heat of passion.

We review de novo a challenge to the sufficiency of the evidence, viewing the evidence in a light most favorable to the prosecutor to determine if a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). "All conflicts in the evidence must be resolved in favor of the prosecution," and "[t]his Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Id*.

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). In this case defendant concedes that he killed Alan, but he contends that the evidence did not support his conviction of first-degree murder because he acted in self-defense. The killing of

---

exception to the hearsay rule that would allow for the introduction of the hearsay recounted by Adam, see MRE 802; and (4) the document contains no indication that defense counsel failed to investigate or interview Adam before trial. With regard to Hill, there is absolutely no basis for defendant's assertion that she could testify that Alan assaulted her. At most, in support of his arguments related to Hill, defendant contends that there is a police report in which Hill is reported as saying that she did not see defendant with a knife. But again, the police report is not part of this Court's review. See MCR 7.210(A)(1). And, in any event, defendant has not provided this Court with the police report in question. The fact thus remains that defendant has not established that defense counsel provided ineffective assistance. See *Putman*, 309 Mich App at 240.

another person in self-defense is justifiable homicide "if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself." *Dupree*, 486 Mich at 707 (quotation marks and citation omitted). "Once a defendant raises the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution must exclude the possibility of self-defense beyond a reasonable doubt." *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014) (quotation marks and citation omitted).

In this case, the prosecutor presented sufficient evidence to prove first-degree murder and to disprove defendant's self-defense claim beyond a reasonable doubt. Viewed in a light most favorable to the prosecution, the evidence showed that defendant told a friend that he was going to get some money together and then he went to his parents' home and demanded items he could sell, such as a bucket truck, a gun, and a motorcycle. When Alan refused defendant's demands, defendant became upset, and he went to his parents' bedroom where documents, including titles for property, were kept. Alan followed defendant and told defendant to leave the room. Ellen, still sitting at the kitchen table, heard a scuffle. When she went to look, defendant had an unarmed Alan in a headlock. Alan tried to get out of the headlock, but defendant "smacked" him in the face and "put him back down." Ellen went to call 911 and a few moments later, before Ellen managed to make the call, defendant approached her with a knife and told her not to call the police. Defendant left, and Ellen then saw Alan bleeding profusely. Alan sustained three stab wounds to his abdominal area, a fourth deep stab wound to his neck, and numerous other cuts and defensive marks. In comparison, defendant was entirely uninjured. The murder weapon was a knife made by defendant, which he habitually carried and which a friend saw in defendant's possession before he went to his parents' house. Further, shortly before the killing, a neighbor overhead defendant say "that he was going to kill the mother fucker."

It is true that defendant testified at trial, offering a different version of events in which he claimed that he feared for his life because Alan—an unarmed and aging man with numerous health conditions—attacked defendant for no discernable reason and pushed him into the bathroom. According to defendant's testimony, Alan retrieved defendant's knife from a safe in the bedroom, and Alan handed the knife to defendant. Then, for no apparent reason, Alan grabbed defendant's right arm, which was holding the knife, and tried to push the knife toward defendant's chest. In contrast to Ellen's version of events, defendant denied any argument with Alan, he denied placing Alan in a headlock, and he denied telling Ellen not to call the police. In contrast to his friend's testimony and that of the neighbor, defendant denied bringing the knife with him to his parents' home, he denied that he was looking for money, he denied using methamphetamine that day, and he denied saying that he was going to kill anyone. In contrast to the evidence that Alan's stab wounds were at least four inches deep, defendant also testified that he simply "poked" Alan with the knife. Further, defendant's version of events was far from immutable. On the night of the killing, defendant initially told Trooper Timothy Gean that he did not kill Alan; then he said that he did kill Alan but that he acted in self-defense; he also told Trooper Gean that there was an argument. When interviewed by Detective Fabian Suarez, defendant again claimed self-defense. But then defendant wrote letters to Detective Suarez and Ellen, denying that he killed Alan and naming Ellen as the perpetrator.

-16-

Despite the inconsistencies in his story and the evidence contradicting his claim of self-defense, defendant argues on appeal that his version of events should be believed. But the credibility of defendant's testimony was a question for the jury. See *Stevens*, 306 Mich App at 630-631. And defendant's specious self-defense claim—that Alan handed defendant a knife and then attacked defendant for no reason at all—is reasonably rejected, particularly given the changing nature of defendant's story. Indeed, the only evidence that defendant feared for his life was his own testimony that Alan attacked him for no reason, but there was ample evidence contradicting defendant's assertion that Alan was the initial aggressor and establishing that defendant attacked Alan, placing him in a headlock and then stabbing him. Evincing consciousness of guilt, and belying his claim that he did not intend to harm Alan, defendant then fled the scene and attempted to prevent Ellen from calling 911. Moreover, even under defendant's version of events in which Alan supposedly initiated the confrontation, the jury could have easily concluded that three deep stab wounds to the stomach, a deep stab wound to the neck, and assorted other slashes and cuts were not reasonably necessary to defend against an attack from an unarmed man almost twice defendant's age who had a bad back and other serious health problems. See *id.* at 631. Viewing the evidence in a light most favorable to the prosecutor, the prosecutor presented more than sufficient evidence to disprove defendant's claim of self-defense and to support defendant's first-degree murder conviction beyond a reasonable doubt. See *id.* at 630-631.

Similarly, to the extent defendant claims that the evidence only supports a finding of manslaughter, this argument lacks merit because a reasonable jury could conclude that there was no provocation to mitigate the killing from murder to manslaughter. See *People v Tierney*, 266 Mich App 687, 714-715; 703 NW2d 204 (2005). That is, defendant's provocation argument also appears to rest on the assertion that Alan was the initial aggressor. But as discussed, there was ample evidence contradicting defendant's claim that Alan attacked him and instead showing that defendant initiated the confrontation and ultimately stabbed an unarmed man. Viewed in a light most favorable to the prosecutor, the evidence supported defendant's first-degree murder conviction.

Affirmed.

/s/ Stephen L. Borrello
/s/ David H. Sawyer
/s/ Deborah A. Servitto